**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE/OPELOUSAS DIVISION**

_____

**IBERIA CREDIT BUREAU, INC., ET AL**

**Versus**

**CINGULAR WIRELESS, ET AL**

_____

**CIVIL ACTION NO. 01-CV-2148**

**HONORABLE JUDGE IVAN L.R. LEMELLE**
**MAGISTRATE JUDGE PATRICK HANNA**

_____

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

I.      BACKGROUND                                                                    2

II.     PREREQUISITES AND REQUIREMENTS FOR CLASS CERTIFICATION        3

III.    LAW AND ARGUMENT                                                             5

        A.      Summary of Argument                                                  5

        B.      Plaintiffs Satisfy The Prerequisite Requirements Of Rule 23(a)       6

                1.      Numerosity                                                    7

                2.      Questions of Law *or* Fact are Common to the Class           9

                        a.      Breach of Contract Claims are common by their very nature.    9

                        b.      Centennial's practices are prohibited in every jurisdiction, not just Louisiana.    13

                3.      The Claims of the Representative Parties Are Typical of the Claims of the Class    16

                4.      The Representative Parties Will Fairly and Adequately Protect the Interests of the Class    18

        C.      Plaintiffs Satisfy Rule 23(b) Requirements Because There Would

                Be Inconsistent Decisions And Common Issues Predominate

                Over Individual Issues                                               18

                1.      Risk of Inconsistent Judgments                               19

                2.      Common Questions of Law and Fact Predominate Over Questions

                        Affecting Individual Class Members and Class Action Superiority    20

                        a.      Common Questions of Law and Fact Predominate         21

                        b.      Class Action Superiority                             23

IV.     CONCLUSION                                                                   24

## TABLE OF AUTHORITIES

**CASES:**      **Page**

*Abbey Villas Dev. Corp. v. Site Contractors, Inc.,* 716 N.E.2d 91 (Ind. App.1999).    13

*Aboud v. DeConcini,* 842 P.2d 1328 (Ariz. App. 1992).    14

*Ambassador Steel Co. v. Ewald Steel Co.,* 33 Mich.App. 495, 190 N.W.2d 275 (1971)    16

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997).    6,18,19,20,21,22

*Appleyard v.. Wallace,* 754 F.2d 955, 958 (11th Cir.1985).    17

*A.R.A. Mfg. Co. v. Pierce,* 341 P.2d 928,932 (Ariz. 1959)    15

*Barlow v. Marion County Hosp. Dist.,* 88 F.R.D. 619 (M.D.Fla.1980).    7

*Bartlett* v. *Browning-Ferris Indus. Chem. Serv., Inc.,* 99-494, (La.App. 1 Cir. 11/12/99) 759 So.2d 755, 756    22

*Bell Atlantic v. AT&T Corp.,* 339 U.S. 394, 301-02 (5th Cir. 2003).    19,20

*Bertulli v. Indep. Ass'n of Cont'l Pilots,* 242 F.3d 290 (5th Cir. 2001).    10

*Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 456 (3d Cir.1977)    22

*Brown v. Cameron-Brown Co.,* 92 F.R.D. 32, 28 (E.D. Va. 1981).    11

*Brown v. Drillers, Inc.,* 630 So.2d 741 (La. 1994).    13

*Carballo v. Iowa Production,* 2003 WL 536727 (La. 2003).    13

*Castano v. Am. Tobacco Co.,* 84 F.3d 734 (5th Cir.1996).    20

*City of Chino v. Jackson,* 118 Cal. Rptr.2d 349 (Cal. App. 2002).    13

*Cone v. Fagadau Energy Corp.,* 68 S.W.3d 147 (Tex. App. 2001).    14

*Derenco, Inc. v. Benj. Franklin Fed. Sav. & Loan Assn.,* 577 P.2d 477 (Or. 1978).    11

*Diefenthal v. Longue Vue Management Corp.,* 561 So.2d 44, 51 (La. 1990).    13

*East Texas Motor Freight Sys. v. Rodriguez,* 431 U.S. 395, 403 (1977)    17

*Entact Services, LLC v. Rimco, Inc.,* 526 F.Supp.2d 213, 220 (D. Puerto Rico, 2007).    14

*Estate of Smith* v. *Samuels,* 2002 WL 1614079 (Miss. App. July 23, 2002)    13

*Ethyl Corp.* v. *Forcum-Lannom Associates, Inc.,* 433 N.E.2d 1214 (Ind. App. 1982).    15

*Evans v. United States Pipe & Foundry,* 696 F.2d 925, 930 (11th Cir.1983).    7

*F Enterprises, Inc.* v. *Kentucky Fried Chicken Corp.,* 351 N.E.2d 121 (Ohio 1976).    15

*Fid. & Cas. Co. of New York v. Hartzell Bros. Co.,* 143 N.E. 137(1924).    14

*General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 157 (1982).    16,18,20

*Gibraltar Savings, FA. v. First Mortgage Corp.* 825 F.Supp. 750 (M.D. La. 1993).    15

*Huff v. N.D. Cass Co. Of Alabama,* 485 F.2d 710, 714 (5th Cir. 1973).    5

*Ingram v. Joe Conrad Chevrolet, Inc.,* 90 F.R.D. 129, 131 (E.D. Ky 1981).    11

*In re Amerifirst Secs. Litig.,* 139 F.R.D. 423, 427 (S.D.Fla.1991).    7

*In re American Commercial Lines, LLC,* 2002 WL 1066743 (E.D. La. May 28, 2002).    10

*In re Federal Skywalk Cases,* 93 F.R.D. 415 (W.D. Mo. 1982).    19

*In re Prudential Insurance Company American Sales Practice Litigation,* 148 F.3d 283 (3d Cir. 1998).    11,20

*Kelly v. Med Life Ins. Co.* ,509 N.E.2d 411, 413 (1987).    14

*Kleiner v. First Nat'l Bank Of Atlanta,* 97 F.R.D. 683 (N.D. Ga. 1983).    10,11,21

*Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984).    17

*Leard v. Breland,* 514 So.2d 778, 782 (Miss. 1987).    16

*Leszczynski v. Allianz,* 176 F.R.D. 659, 668 (S.D. Fl. 1997).    4,7,14

*Leyva v.* Buley, 125 F.R.D. 512 (E.D. Wash. 1989).    19

*LPP Mortgage, Ltd. v. Brammer, Chasen & O'Connell,* 2008 WL 5280912 (D.Virgin Islands).    14,16

*Mace v. v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997).                                22

*Maldonado v. Ochsner,* 237 F.R.D. 145, 148 (E.D La. 2006)                                          5,10,19

*Mclinden v. Coco,* 765 N.E.2d 606, 611-12 (Ind. App. 2002).                                        13

*Nemec v. Rollo,* 114 Ariz. 589, 562 P.2d 1087 (App.1987).                                          13

*Old Kent Bank v. Sobczak,* 620 N.W.2d 663, 666, 667 (Mich. 2000).                                  13

*Polk* v. *Koerner,* III 533 P.2d 660 (Az. 1975).                                                   13

*Rasheed v. Chrysler Corp.,* 517 N.W.2d 19 (Mich. 1994).                                            14

R.G. *McClung Cotton Co., Inc. v. Cotton Concentration Co.,* 479 S.W.2d 733, 738 (Tex.Civ.App. Dallas 1972).                                                                        16

*Riofrio Anda v. Ralston Purina, Co.,* 959 F.2d 1149 (1st Cir. Puerto Rico1992).                    16

*Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216 (1974).                        17

*Schutte v. The Danis Cos.,* 753 N.E.2d 899, 905 (Ohio App. 2001).                                  14

*Smilow v. Southwestern Bell Mobile Systems, Inc.,* 323 F.3d 32 (1st Cir. 2003).                    10,12,20,21

*Stewart v. Winter,* 669 F.2d 328, 335 (5th Cir.1982).                                              10

*Sullivan v. Zebley,* 493 U.S. 521 (1990).                                                          6

*Tamarind Resort Assocs. v. Gov't of Virgin Islands,* 138 F.3d 107, 110 (3d Cir.1998).              14

*Vulcan Tools of PuertoRico v. Makita U.S.A., Inc.,* 23 F.3d 564, 567 (1st Cir.1994).               14

*Warwick* v. *Gautier Utility Dist., 738* So.2d 212, 215 (Miss.1999).                               13

*Young v. Equifax Credit Information Services, Inc.,* 294 F.3d 631 5th Cir. 2002)                    3

**RULES & RESTATEMENTS:**                                                                           **Page**

Restatement (Second) of Contracts                                                                   14,15

Corbin on Contracts                                                                                 15

**PUBLICATIONS:**                                                                                   **Page**

Newberg on Class Actions, 4th Ed.                                                                   8,18,22

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

| IBERIA CREDIT BUREAU, ET AL | LAFAYETTE-OPELOUSAS DIVISION |
|---|---|
| VERSUS | MAGISTRATE HANNA, JUDGE LEMELLE |
| CINGULAR WIRELESS, ET AL | CIVIL NUMBER: 6:01-CV-2148 |

## MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Classes have been certified on these exact same contracts applying nearly identical class certification prerequisites and requirements in Louisiana state court:

> All present and former customers of Centennial through the date of this Preliminary Approval, excluding Defendants, Class Counsel, Defendants' Counsel, or the employees of any of them, or any state, federal foreign, or local government.[1]

Finally, on August 13, 2003, the Honorable Gerard B. Wattigny in the case of *Sutton's Steel,* a class was certified against Bellsouth that was defined as follows:

> The following class is certified:

> Those natural persons, businesses and/or related entities who entered into contracts for a specific amount of airtime for a certain amount of money per minute for cellular service or wireless telephone services provided by defendant, BellSouth Mobility, in Louisiana, Florida, Mississippi, Alabama, Georgia, Tennessee, Kentucky, North Carolina, and South Carolina.

> Excluded from this class are the following:
> Defendants, any parent, subsidiary, affiliate, or controlled person of defendants, as well as the officers, directors, agents, servants or employees of defendants, the immediate family members of any such person(s), and any trial judge that may preside over this cause.[2]

These decisions were in cases raising the exact claims that are brought forth in the current Complaint. These decisions after analyzing nearly identical claims and nearly identical proof as will be submitted at the Class Certification Hearing of this matter.  In fact, Defendant identifies and points out the similarity between the claims in its Motion To Dismiss wherein it attempted to strike Plaintiffs' class on grounds of *res judicata*.[3]  In the event it was unclear if the claims were the same, Centennial Corporate Representative Francis P. Hunt stated in his deposition that the claims were the same.[4]  Given the similarity between these cases, Plaintiffs submit that this action should also be certified as a class.

---

[1] See Settlement Documents (*Judi Abrusley v. Centennial Cellular Corp.*), attached hereto as Exhibit "1."
[2] See Class Certification Ruling (*Sutton's Steel & Supply, et. al. v. Bellsouth Mobility, Inc.,* No. 91421-A, 16th JDC, Parish of Iberia, State of Louisiana), attached hereto as Exhibit "2."
[3] See Motion To Dismiss, attached hereto as Exhibit "3."
[4] See Deposition of Centennial Communications Corp., attached hereto as Exhibit "4."

I.      **BACKGROUND**

This action is brought on behalf of customers of Centennial Communications Corp. (hereinafter referred to as "Centennial"), the parent entity that did business through numerous related entities, pursuant to Federal Rule of Civil Procedure 23.[5]  Centennial did business and provided wireless service in the United States, its territories Puerto Rico and the US Virgin Islands and Jamaica.[6]  It provided these services outside the mainland of the United States in the very same manner it provided those services within the United States.[7]  The contracts are identical, as are the terms and conditions in those contracts.[8]

Plaintiffs allege that Centennial's contractual breaches deprived them of millions of dollars.  These customers signed standard form contracts with Centennial pursuant to which Centennial agreed to provide them with wireless or cellular air time.[9]  Plaintiffs herein contracted with Centennial using these standard form contracts.[10]  The customers contracted for a specific amount of air time at a price.[11]  The customers purchased airtime on a per minute basis, as specified in their written contracts.[12]

Despite its contractual obligation to bill for air time in minutes, Centennial billed its customers on a different basis that resulted in massive overcharging.  Namely, Defendant rounds up to the nearest whole minute for every phone call made by a customer.[13]  It then bills the customer for this call.  Thus, if the call is five (5) seconds, the charge is for a full sixty (60) seconds of airtime.[14]

The resulting charge is not based on the actual minutes of use, as contracted for, but on "rounded minutes" that includes time never used by Centennial's customers.  The resulting difference between what Centennial promised and what Centennial actually provided amounts to millions of dollars.  The result is rapid depletion and use of the airtime minute bundles that are purchased by a consumer resulting in either

---

[5] See Exhibit "4," at page [ ].
[6] See Exhibit "4," at page [ ].
[7] See Exhibit "4," at page [ ].
[8] See Exhibit "4," at page [ ].
[9] See Standard Form Representative Contracts, attached hereto, *in globo*, as Exhibit "5."
[10] See Client Contracts, attached hereto, *in globo*, as Exhibit "6."
[11] See Exhibits "5" and "6."
[12] See Exhibits "5" and "6."
[13] See Exhibit "4," at page [ ].
[14] See Exhibit "4," at page [ ].

excessive overages or in the customer increasing plan size. Under either circumstance, the customer lost money and was mislead.

In addition, Centennial, in breach of its contractual duty, bills its customers for unanswered calls.[15] Unanswered calls are calls placed by a subscriber to a desired phone number but the calls are not answered. These calls are also billing anomalies that are improperly billed to customer accounts that clearly should not have been. Centennial knowingly and systematically billed its customers for such calls and continues to do so.

This is a classic case of contractually cheating a multitude of consumers, where the relatively small amounts per customer deter individuals from seeking to enforce their contractual rights.

## II.    PREREQUISITES AND REQUIREMENTS FOR CLASS CERTIFICATION

The proposed plaintiff class consists of past and present customers who entered into standard contracts with Centennial. The time periods for this class will vary as part of the class was settled on October 19, 2007, as identified above herein.[16] One may not settle or certify future claims that have not accrued.[17] Plaintiffs allege that there is a clear difference between Centennial's promise and Centennial's performance. The entire class contracted with Centennial for a specific amount of air time for a specific amount of money, but were not provided with the actual air time they purchased due to Centennial's practice of rounding up the actual time to the next full minute increment.[18]

To support class certification, Plaintiffs must satisfy all the elements of Rule 23(a) and at least one of the criteria in 23(b). Under FRCP 23, Plaintiffs must initially satisfy each of the four thresholds requirements of Rule 23(a):

(1)    the class must be so numerous that joinder of all members is impracticable ("numerosity");
(2)    questions of law or fact common to the class must exist ("commonality");
(3)    the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and

---

[15] See Exhibit "4," at page [ ].
[16] See Exhibit "1."
[17] *Young v. Equifax Credit Information Services, Inc.*, 294 F.3d 631 5th Cir. 2002) stating that under Louisiana law, releases of future actions are narrowly construed to assure that the parties fully understand the rights released and the resulting consequences; as a result, if the release instrument leaves any doubt as to whether a particular future action is covered by the compromise, it should be construed not to cover such future action.
[18] See Exhibit "4," at page [ ].

(4)    the representative parties must fairly and adequately protect the interests of the class ("adequacy of representation").

Plaintiffs seeking to represent the class bear the burden of establishing that all four requirements have been met.[19]  These prerequisites are mandatory and the failure to establish any one is fatal to a motion for class action certification.[20]  Centennial's contractual duty, Centennial's breach of that duty, and the damages caused by the breach generate questions of law and fact common to the class satisfying rule 23(a)'s requirements.

In addition to meeting the four preliminary requirements in subdivision (a), Plaintiffs must then satisfy one of the elements of Rule 23(b) in order for the lawsuit to be maintained as a class action.  Here, Plaintiffs satisfy both Rule 23(b)(1)'s requirements that adjudications with respect to individual members of the class would be, as a practical matter, dispositive of the interests of the other members not parties to adjudications or would substantially impair or impede their ability to protect their interests.  The requirements of Rule 23(b)(3), that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy, are also satisfied.

Plaintiffs will show that (1) adjudications with respect to individual members of the class would be as a practical matter dispositive of the interests of the other members not parties to adjudications or would substantially impair or impede their ability to protect their interests; (2) the common questions predominate over questions affecting individual class members, and (3) a class action is a superior method—indeed the only viable method—for adjudicating this controversy; thus, satisfying the criteria of Rule 23(b).

## III.    LAW AND ARGUMENT

A.    Summary of Argument

Through the present motion, the representative Plaintiffs seek to certify a class as defined as follows:

All governmental entities who entered into contracts for a specific amount of airtime for a certain amount of money per minute for cellular service or wireless telephone services as provided by Centennial Communications Corp. and all of its related entities, in the United States, its territories of Puerto Rico and the US Virgin Islands and Jamaica from 1991 to present; and

---

[19] *Leszczynski v. Allianz*, 176 F.R.D. 659, 668 (S.D. Fl. 1997).
[20] *Leszczynski v. Allianz*, 176 F.R.D. 659, 668 (S.D. Fl. 1997).

> All natural persons, businesses and/or related entities who entered into contracts for a specific amount of airtime for a certain amount of money per minute for cellular service or wireless telephone services as provided by Centennial Communications Corp. and all of its related entities, in the United States' territories of Puerto Rico and the US Virgin Islands and Jamaica from 1991 to present; and
>
> All natural persons, businesses and/or related entities who entered into contracts for a specific amount of airtime for a certain amount of money per minute for cellular service or wireless telephone services as provided by Centennial Communications Corp. and all of its related entities, in the United States, its territories of Puerto Rico and the US Virgin Islands and Jamaica from October 19, 2007 to present.

Plaintiffs' burden at this stage is to satisfy the class action requirements as they pertain to this class. The trial court cannot be concerned with whether the Plaintiffs have stated a cause of action or with the likelihood that they will prevail on merits.[21] In other words:

> In ruing upon a motion for class certification, courts treat the substantive allegations contained in the Plaintiffs' complaint as true. The issue is not whether the Plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. The court may look past the pleadings to the record and any other completed discovery to make a determination as to the class certification issue.[22]

Plaintiffs clearly satisfy the class action requirements. The contract provisions at issue are common to the putative class members.[23] The contracts call for billing for air time in minutes, not in rounded minutes. The contract terms and their alleged breach are common issues that dominate this case. This touchstone of class action certification requirements—the need for commonality of issues—can be satisfied where, as in this case, a class covers more than one state.[24]

Plaintiffs also satisfy the other class action requirements of Rule 23. Obviously, too many class members exist for joinder. The claims of the representative parties are typical of the class. They all signed a Centennial contract for a specific amount of airtime to be calculated by the second, or based on minutes. They all allege breaches of those contracts based on rounding up. The common class issues will be fairly and adequately protected by the representative parties because they have the same key contractual terms and suffered the same breach as the class. Moreover, the class is objectively defined based on the existence of

---

[21] *Huff v. N.D. Cass Co. Of Alabama*, 485 F.2d 710, 714 (5th Cir. 1973).
[22] *Maldonado v. Ochsner*, 237 F.R.D. 145, 148 (E.D La. 2006) *citing In re Am. Commercial Lines, LLC*, 2002 WL 1066743, at *2 (E.D. La. May 28, 2002).
[23] See Exhibit "4," generally, identifying that the contracts are the same for all subscribers/customers of Defendant.
[24] *Sullivan v. Zebley*, 493 U.S. 521 (1990).

cellular or wireless contracts with Centennial. The issues of the common contract terms and breach predominate over individual class member questions. Finally, a class action is the superior vehicle for adjudication of this mass of small claims.[25]

       B.     Plaintiffs Satisfy The Prerequisite Requirements Of Rule 23(a)

Plaintiffs seeking class certification must satisfy the four well-known threshold requirements of Rule 23(a) and also the requirements of either Rule 23(b)(1), (2) or (3). Rule 23 states, in pertinent part:

**(a) Prerequisites.**

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable,
> (2) there are questions of law or fact common to the class,
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

**(b) Types of Class Actions.**

A class action may be maintained if Rule 23(a) is satisfied and if:
> (1) prosecuting separate actions by or against individual class members would create a risk of:
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

---

[25] *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997).

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Rule 23(a) thus requires a showing of numerosity, commonality, typicality, and adequate representation. Each of these requirements is satisfied in this case.

### 1.     Numerosity

Plaintiffs seek to certify a class consisting of three (3) subclasses, each defined by time period and geographic locality. To satisfy numerosity, Plaintiffs must proffer some evidence of the number of members in the purported class, or at least a reasonable estimate of that number.[26] The Court may "make common sense assumptions in order to find support for numerosity."[27] It is not necessary that the precise number of class members be known.[28]

As noted above herein, this matter was originally settled by Centennial on October 19, 2007.[29] Centennial identified in its Motion To Dismiss current Plaintiffs' claims based on *res judicata* that this was a nationwide class of present and former customers as of the date of preliminary approval:

> 5. On October 19,2007, after substantial litigation, discovery, multiple hearings, and a lengthy mediation, the *Abrusley* court **certified a nationwide class** of '[a]ll present and former customers of Centennial through the date of ... Preliminary Approval, excluding Defendants, Class Counsel, Defendants' Counsel, or the employees of any of them, or any state, federal, foreign or local government.'[30]

The Fifth Circuit in the *Young* case stated that releases of future actions are narrowly construed to assure that the parties fully understand the rights released and the resulting consequences; as a result, <u>if the release instrument leaves any doubt as to whether a particular future action is covered by the compromise, it should be construed not to cover such future action.</u> Further, all doubts regarding the propriety of class certification should be resolved in favor of certification.[31]

---

[26] *Leszczynski*, 176 F.R.D. at 670 (citing *In re Amerifirst Secs. Litig.,* 139 F.R.D. 423, 427 (S.D.Fla.1991).

[27] *Leszczynski v. Allianz,* 176 F.R.D. 659, 668 (S.D. Fl. 1997) citing *Evans v. United States Pipe & Foundry,* 696 F.2d 925, 930 (11th Cir.1983).

[28] *Leszczynski v. Allianz,* 176 F.R.D. 659, 668 (S.D. Fl. 1997) citing *Barlow v. Marion County Hosp. Dist.,* 88 F.R.D. 619, 625 (M.D.Fla.1980).

[29] See Exhibit "1."

[30] See Exhibit "3."

[31] Newberg on Class Actions, 4th Ed., § 2:3, page 55.

Plaintiffs were recently solicited by Centennial requesting they become a new subscriber and as part of that conversation, Centennial identified what it considered "nationwide."[32] Nationwide is defined by Centennial as "the continental United States."[33] Nationwide, per the Defendant does not include Puerto Rico, the US Virgin Islands and clearly does not include Jamaica.[34] In fact, Centennial identified that should a handset be used outside the continental United States, international calling rates would be applied.[35] Finally, in an effort to make certain that it was clear that "nationwide" did not include Puerto Rico, the US Virgin Islands and Jamaica, Marlene, at Centennial customer service number 800.493.3121, conferred with a supervisor who also identified that nationwide meant the continental United States.[36]

By defining the class in such a manner, Defendant excluded from the class its customers that had wireless service in the United States territories of Puerto Rico and the US Virgin Islands and Jamaica. According to Francis P. Hunt, in an Affidavit/Declaration provided on November 21, 2008 in his position as Senior Vice-President and Controller and former head of the Caribbean Division of Centennial, he identified that there are 440,000 customers in Puerto Rico and the US Virgin Islands.[37] Further, Mr. Hunt identified in his deposition that Centennial has over 1,000,000 subscribers, currently.[38] Mr. Hunt's Declaration verifies this indicating that Centennial has 1,100,000 subscribers.[39] Obviously, this is far too many persons and entities to practically join and numerosity is clearly satisfied.

Mr. Hunt testified that in addition to the three named governmental entities that are named in this lawsuit; namely, the Iberia Parish Sheriff's Office, City of Jeanerette and Town of Delcambre, there are two (2) additional governmental customers: the Alexandria Sheriff's Department and United States Military, Fort Polk, Louisiana.[40] Mr. Hunt stated that the remaining governmental entities could readily be identified by reviewing a subscriber list.[41] Plaintiffs requested that information immediately following the deposition that

---

[32] See Affidavit of DPDLLC, attached hereto as Exhibit "7."
[33] See Exhibit "7."
[34] See Exhibit "7."
[35] See Exhibit "7."
[36] See Exhibit "7."
[37] See Declaration of Francis P. Hunt, attached hereto as Exhibit "8."
[38] See Exhibit "4," at page [ ].
[39] See Exhibit "8."
[40] See Exhibit "4," at page [ ].
[41] See Exhibit "4," at page [ ].

took place on July 29, 2010 which was Plaintiffs' first and only opportunity to identify the number of governmental subscribers, despite having requesting same throughout discovery.[42]  Mr. Hunt stated that Alexandria Sheriff's Department has over thirty (30) wireless phones and Fort Polk holds over one hundred (100).[43]  The Iberia Parish Sheriff's Office held over eighty (80) wireless lines.[44]  The City of Jeanerette holds six (6) lines and Town of Delcambre holds several lines as well.

For numerosity, the relevant inquiry is not the number of governmental entities themselves; rather, as identified by Centennial's corporate representative, the relevant inquiry is the number of cellular phone lines associated with each account.[45]  Mr. Hunt identified that for billing purposes, each line was measured separately for billing purposes.[46]  Thus, each line was separate for purposes of rounding up.[47]  Joinder of these claims alone is impracticable due to the number of lines associated with the various accounts.

    2.      *Questions of Law <u>or</u> Fact are Common to the Class*

    a.      <u>*Breach of Contract Claims are common by their very nature.*</u>

Courts have routinely held that the test of commonality is not a demanding one, and requires only that there be at least one issue, the resolution of which will affect all or a significant number of the putative class members.[48]  Commonality requires "at least one issue whose resolution will affect all or a significant number of the putative class members."[49]  "The threshold of commonality is not high."[50]  Moreover:

> [t]he interests and claims of the various Plaintiffs need not be identical. Rather, the commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members. The fact that some of the Plaintiffs may have different claims, or claims that may require individualized analysis, will not defeat commonality.[51]

The United States First Circuit Court of Appeal recently performed a rigorous analysis of Rule 23 as applied to class actions alleging a breach of contract claim involving cellular telephone service in the matter of

---

[42] See Exhibit "4."
[43] See Exhibit "4," at page [ ].
[44] See Billing Spreadsheet (12.01.03), attached hereto as Exhibit "9."
[45] See Exhibit "4," at page [ ].
[46] See Exhibit "4," at page [ ].
[47] See Exhibit "4," at page [ ].
[48] *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d  290, 296-97 (5th Cir. 2001).
[49] *Maldonado v. Ochsner*, 237 F.R.D. 145 (E.D. La. 2006) citing *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir.1982).
[50] *Maldonado v. Ochsner*, 237 F.R.D. 145 (E.D. La. 2006) *citing Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 296-97 (5th Cir. 2001).
[51] *In re Am. Commercial Lines, LLC*, 2002 WL 1066743, at *8 (E.D. La. May 28, 2002).

*Smilow* v. *Southwestern Bell Mobile Systems, Inc.*[52]    The Court of Appeal reversed a decertification by the trial court and certified a class similar to the class that is the subject of this motion. On the issue of commonality the Court held:

> The plaintiffs' claims are based entirely on a standard form contract which the defendant used with every member of the class. The common factual basis is found in the terms of the contract, which are identical for all class members.  The common question of law is whether the defendant was precluded from charging [the customer in whole minutes, for unanswered or dropped calls].[53]

The Court must also look to whether the Defendant raised a common defense to the class claims.[54]  Here, Defendant alleges that the terms and conditions were adequately and properly disclosed under contract law.  Thus, this further cements Plaintiffs' argument as to commonality, typicality and predominance.

In *Kleiner v. First National Bank of Atlanta,*[55] class members signed similar standard form contracts and brought a class action alleging federal and state breach of contract claims.  Finding that the commonality requirement was met, the Court stated:

> When viewed in light of Rule 23, claims arising from <u>interpretations of a form contract</u> appear to present the <u>classic case for treatment as a class action</u>, and breach of contract cases are routinely certified as such.[56]

The Court stated that individual questions relative to damages and defenses to the contracts may remain after interpretation of the contract, but that would not defeat the commonality requirement.[57]  Rule 23 only requires that common issues predominate, not that all issues are common to the class.[58]

Moreover, in response to the defendant's argument that a breach of contract case could not be certified a class action because liability in every case would depend on the individual's understanding of the agreement he signed, the *Kleiner* Court held that "[i]f breach of contract cases were meant to be excluded from the Rule's [23] coverage, Congress would have so specified."[59]  Furthermore, the Court found that "to

---

[52] 323 F.3d 32 (1st Cir. 2003).
[53] *Smilow* v. *Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32 (1st Cir. 2003).
[54] *Smilow* v. *Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32 (1st Cir. 2003).
[55] 97 F.R.D. 683 (N.D. Ga. 1983).
[56] *Kleiner v. First National Bank of Atlanta,* 97 F.R.D. 683 (N.D. Ga. 1983).
[57] *Kleiner v. First National Bank of Atlanta,* 97 F.R.D. 683 (N.D. Ga. 1983) *citing Brown v. Cameron-Brown Co.*, 92 F.R.D. 32, 28 (E.D. Va. 1981); *Ingram v. Joe Conrad Chevrolet, Inc.*, 90 F.R.D. 129, 131 (E.D. Ky 1981).
[58] *In re Prudential Insurance Company American Sales Practice Litigation*, 148 F.3d 283 (3d Cir. 1998).
[59] *Kleiner v. First National Bank of Atlanta,* 97 F.R.D. 683 (N.D. Ga. 1983) *citing Derenco, Inc. v. Benj. Franklin Fed. Sav. & Loan Assn.*, 281 Or. 533, 577 P.2d 477, 499 (1978).

presume that the meaning of a contract will always turn on the state of mind of the parties is inconsistent with fundamental principles of contract interpretation."[60]

When interpreting contracts the parties' actual intentions are evidenced not by what they intended but by what they wrote.[61] The Court noted that its primary task is to construe the terms of the contract as written and parol evidence of the parties' subjective intent was inadmissible.[62]

In the present case, the contract between Plaintiffs and Centennial,[63] the attached representative contracts[64] and the testimony of Centennial's corporate representative[65] clearly establish that questions of law or fact are common to the class. Centennial's own representative states that every customer since Centennial began doing business was subject to a standard form contract that was always front and back and included rounding up to the nearest whole minute.[66] The class alleges common contract claims, common breaches of contract, and common types of damages. Therefore, all commonality standards are fully satisfied and this element is satisfied.

The Complaint alleges that this action arises out of a standard form contracts employed by Centennial in contracting with its customers.[67] Centennial acknowledges that its relevant airtime services are provided pursuant to standard form written contracts.[68] Centennial uses common contract forms in every one if its service areas; including, Puerto Rico, the US Virgin Islands and Jamaica.[69] The contracts specify a number of airtime minutes that the Plaintiffs are entitled to receive and the price to be charged for such minutes.[70]

Thus, the key contract provisions are common to the class. Centennial's promises to deliver airtime in units of minutes are common to the class members' contracts. These promises appear on the front of

---

[60] *Kleiner v. First National Bank of Atlanta,* 97 F.R.D. 683 (N.D. Ga. 1983).
[61] *Kleiner v. First National Bank of Atlanta,* 97 F.R.D. 683 (N.D. Ga. 1983).
[62] *Kleiner v. First National Bank of Atlanta,* 97 F.R.D. 683 (N.D. Ga. 1983).
[63] See Exhibit "6."
[64] See Exhibit "6."
[65] See Exhibit "4," generally.
[66] See Exhibit "4," at page [ ].
[67] See Complaint, attached hereto as Exhibit "10."
[68] See Exhibit "4," at page [ ].
[69] See Exhibit "4," at page [ ].
[70] See Exhibit "4," at page [ ] and Exhibits "5" and "6."

Centennial's form contracts, and are common to all putative class members' contracts.[71]  Centennial's' rate plans are all based on minutes and rounding up to whole minutes for billing is also common to all the Centennial wireless contracts.

Centennial's alleged contractual breaches are also common to the class.  Centennial failed to provide plaintiffs with the contractual amount of time at the contract price.[72]  The defendant breached its contracts with the plaintiffs by demanding and/or in fact receiving from the plaintiffs such sums of money which were not due under the common contracts.[73]  Centennial systematically billed plaintiffs for time exceeding that amount actually billable under the terms of the contracts. This breach is common to all plaintiffs' contracts causing all the plaintiffs substantially the same kind of harm.[74]

All of the plaintiffs sustained damages in the same manner, resulting from the same behavior by Centennial.[75]  All class plaintiffs are entitled to damages based on the difference between what, what they were contractually promised, and what they were actually provided. The calculation of damages will turn largely on common questions of law and fact. These include how Centennial calculated air time usage and how Centennial calculated charges.

> b.    *Centennial's practices are prohibited in every jurisdiction, not just Louisiana.*

In every state for which class certification is sought, the plain language of the contract—obliging Centennial to deliver and bill for air time in accordance with the contract—will determine Centennial's duty. In each such state the unambiguous terms of contracts determine the parties' contractual duties. *Louisiana* law makes this clear.[76]  The meaning and intent of the parties to a written instrument should be determined within the four corners of the document and its terms should not be explained or contradicted by extrinsic evidence.[77]  Extrinsic evidence is inadmissible to either explain or contradict a contract's terms.[78]  All other Centennial states wherein Centennial does business are in accord. Relevant authorities, organized by state, are:

---

[71] See Exhibit "4," at page [ ] and Exhibits "5" and "6."
[72] See Exhibit "10."
[73] See Exhibit "10."
[74] *Smilow* v. *Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32 (1st Cir. 2003).
[75] See Exhibit "10."
[76] *Carballo v. Iowa Production,* 2003 WL 536727 (La. 2003).
[77] *Brown v. Drillers, Inc.,* 630 So.2d 741 (La. 1994).

*Indiana.* "The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts."[79]

*Arizona.* "In interpreting a contract the court must ascertain and give effect to the intention of the parties at the time it was made, if at all possible.[80] If the contract is unambiguous, the intent of the parties is determined by the contents of the contract alone.[81]

*California.* "The paramount rule governing the interpretation of contracts is to give effect to the mutual intention of the parties *as it existed at the time of contracting,* so far as it is ascertainable and lawful. The [intention] of the parties must, in the first instance, be derived from the language of the entire contract."[82]

*Michigan.* "The primary goal in interpreting contracts is to determine and enforce the parties' intent.[83] To do so, this Court reads the agreement as a whole and attempts to apply the plain language of the contract itself."[84]

*Mississippi.* "[W]hen interpreting a contract, the court's concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy."[85]

*Ohio.* "Contract construction is utilized to determine the intent of the parties…The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement."[86] When common words are utilized in a contract, they are given their ordinary meaning.[87]

*Puerto Rico.* Once a court determines that the terms of a contract are sufficiently clear so that only one meaning is possible, the court cannot dwell on the alleged intent of the parties at the time they entered into the contract. When an agreement leaves no doubt as to the intention of the parties, a court should not look beyond the literal terms of the contract.[88]

*US Virgin Islands.* The interpretation of an integrated agreement is a question of law.[89] [T]he words of an integrated agreement are the most important evidence of intention.[90] It is

---

[78] *Diefenthal v. Longue Vue Management Corp.,* 561 So.2d 44, 51 (La. 1990).
[79] *Mclinden v. Coco,* 765 N.E.2d 606, 611-12 (Ind. App. 2002); *Abbey Villas Dev. Corp. v. Site Contractors, Inc.,* 716 N.E.2d 91, 99 (Ind. App.1999).
[80] *Aboud v. DeConcini,* 842 P.2d 1328, 1332 (Ariz. App. 1992) citing *Polk* v. *Koerner,* III Ariz. 493, 533 P.2d 660 (1975).
[81] *Nemec v. Rollo,* 114 Ariz. 589, 562 P.2d 1087 (App.1987).
[82] *City of Chino v. Jackson,* 118 Cal. Rptr.2d 349, 351 (Cal. App. 2002).
[83] *Old Kent Bank v. Sobczak,* 620 N.W.2d 663, 666, 667 (Mich. 2000).
[84] *Rasheed v. Chrysler Corp.,* 445 Mich. 109, 127, n.28, 517 N.W.2d 19 (1994).
[85] *Estate of Smith* v. *Samuels,* 2002 WL 1614079 (Miss. App. July 23, 2002) quoting *Warwick* v. *Gautier Utility Dist., 738* So.2d 212, 215 (Miss.1999).
[86] *Schutte v. The Danis Cos.,* 753 N.E.2d 899, 905 (Ohio App. 2001); *Kelly v. Med Life Ins. Co. ,*509 N.E.2d 411, 413 (1987).
[87] *Fid. & Cas. Co. of New York v. Hartzell Bros. Co.,* 143 N.E. 137(1924).
[88] *Entact Services, LLC v. Rimco, Inc.,* 526 F.Supp.2d 213, 220 (D. Puerto Rico, 2007) citing *Fernandez v. Municipality of Bayamon,* 942 F.Supp. 89, 94 (D.P.R.1996) and *Vulcan Tools of PuertoRico v. Makita U.S.A., Inc.,* 23 F.3d 564, 567 (1st Cir.1994).
[89] *LPP Mortgage, Ltd. v. Brammer, Chasen & O'Connell,* 2008 WL 5280912 (D.Virgin Islands).
[90] *Tamarind Resort Assocs. v. Gov't of Virgin Islands,* 138 F.3d 107, 110 (3d Cir.1998) *citing* Restatement (Second) of Contracts 212, cmt. b).

axiomatic that where the language of a contract is clear and unambiguous, it must be given its plain meaning.[91]

*Texas.* "The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous."[92]

Thus, the breached contracts' terms define Centennial's obligations. Since the pertinent contract terms are common to the class, the commonality of the states' contractual interpretive principles assures that common issues of law and fact will predominate with respect to Centennial's contractual duty. This exact conclusion was rendered by two federal courts in breach of contract claims.[93]  Accordingly, there is sufficient commonality in the respective states contractual interpretative principals to mandate that this Court should certify this action as a class.

It requires no citation to establish that failure to perform a contractually assumed duty is a breach of contract in every state.[94]  The Restatement of Contracts states that "[w]hen performance of a duty under a contract is due any non-performance is a breach."  It also requires no citation to establish that Centennial breached its respective customer contracts by charging its customers for calls that it knew were never made and/or were mistakes.

The Complaint alleges damages suffered due to Centennial's breach of its common duty by its common practice of rounding up.[95]  Plaintiffs will show that Centennial damaged them in the same manner as a result of the same conduct. The difference between what should have been billed and what was billed is a mathematical computation. Variations in state law, if they exist, will not affect the damages determination.

A measure of damages in a breach of contract case such as this is the amount of the overpayment. Under Louisiana Civil Code Article 1994, "[a]n obligor is liable for the damages caused by his failure to perform a conventional obligation." "Damages for breach of contract are intended to place the plaintiff in the

---

[91] *Tamarind Resort Assocs. v. Gov't of Virgin Islands,* 138 F.3d 107, 110 (3d Cir.1998) *citing* Restatement (Second) of Contracts 202(3)(a).
[92] *Cone v. Fagadau Energy Corp.,* 68 S.W.3d 147, 153 (Tex. App. 2001).
[93] *See Kleiner v. First National Bank of Atlanta,* 97 F.R.D. 683 (ND. Ga. 1983) (The application of various state laws would not be a bar to class certification where, as here, the general policies underlying common-law rules of contract interpretation tend to be uniform.); *Leszczynski v. Allianz Insurance,* 176 F.R.D. 659 (USDC SD. Fla. 1997) (As long as the general policies underlying common-law rules of contract interpretation tend to be uniform, the rational of *Kleiner* should be controlling in the instant case).
[94] *E.g.,* Restatement (Second) of Contracts § 235(2) (1979).
[95] See Exhibit "10."

same position he would have been in had the defendant not breached the contract."[96]   Plaintiffs will be returned to their rightful position if Centennial repays the amounts wrongfully overcharged.

This basic principle of Louisiana law is also the law of every state wherein Centennial providers wireless service.

*Arizona.* "The familiar aim of compensatory contract damages, the computation of which is hardly an exact science is to yield the net amount of the losses caused and the gains prevented by the breach of contract, *i. e.,* The expected additions to the plaintiffs wealth and the actually resulting subtractions there from."[97]

*California.* Under California Civil Code § 3300, "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

*Indiana.* The measure of damages in a breach of contract case is the loss suffered as a result of the breach.[98]

*Ohio.* "The damage award should put the injured party in as good a position had the contract not been breached."[99]

*Michigan.* "The object of the measure of damages in a breach of contract suit is to place the injured party in as good a position as he would have been in if the promised performance had been rendered.[100]

*Mississippi.* "A non-breaching party is entitled to be placed in the position that party would have attained absent the breach."[101]

*Puerto Rico.* A party's financial loss is the ultimate measure of his damage and the purpose of a damage award is to compensate the injured party for loss resulting from the conduct of the wrongdoer, "not to penalize the wrongdoer or to allow plaintiff to recover a windfall."[102]

*US Virgin Islands.* Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed.[103]

---

[96] *Gibraltar Savings, FA.* v. *First Mortgage Corp.* 825 F.Supp. 750, 751 (M.D. La. 1993).
[97] *A.R.A. Mfg. Co. v. Pierce,* 341 P.2d 928,932 (Ariz. 1959) citing Restatement of Contracts §§ 329; 5 Corbin on Contracts §§ 1002.
[98] *Ethyl Corp.* v. *Forcum-Lannom Associates, Inc.,* 433 N.E.2d 1214, 1221 (Ind. App. 1982).
[99] *F Enterprises, Inc.* v. *Kentucky Fried Chicken Corp.,* 351 N.E.2d 121, 125 (Ohio 1976).
[100] *Ambassador Steel Co. v. Ewald Steel Co.,* 33 Mich.App. 495, 190 N.W.2d 275 (1971), *Dierickx v. Vulcan Industries,* 10 Mich.App. 67, 158 N.W.2d 778 *(1968)." Allen v. Michigan Bell Tel. Co.,* 232 N.W.2d 302, 304 (Mich. App.1975).
[101] *A & F Properties, LLCv. Lake Caroline, Inc.,* 775 So.2d 1276, 1281 (Miss. App. 2000), *citing, Leard v. Breland,* 514 So.2d 778, 782 (Miss. 1987).
[102] *Riofrio Anda v. Ralston Purina, Co.,* 959 F.2d 1149 (1st Cir. Puerto Rico1992).
[103] *LPP Mortgage, Ltd. v. Brammer, Chasen & O'Connell,* 2008 WL 5280912 (D.Virgin Islands).

*Texas*. "The measure of damages for breach of contract is the amount necessary to place plaintiffs in a financial position equivalent to that in which it would have had if the contract had been fully performed by both parties.[104]

This action for breach of contract invokes some of the most basic principles of contract jurisprudence. Contract terms define duties; breach of those terms generate liability for damages. It is not surprising that multi state analysis fully supports certifying this class action.

   3.   *The Claims of the Representative Parties Are Typical of the Claims of the Class*

Under Rule 23(a), "[t]he claims or defenses of the representative parties [must be] typical of the claims or defenses of the class."  The Supreme Court stated in *General Telephone Co. of the Southwest v. Falcon*, "the commonality and typicality requirements tend to merge."[105]  Both are designed to assure that the claims of the named Plaintiffs are sufficiently related- to assure, in other words, that the plaintiff is a member of the class he seeks to represent.[106]

The central inquiry in determining whether a proposed class has "typicality" is whether the "class representative [is] part of the class and 'possess[es] the same interest and suffer[s] the same injury' as the class members."[107]  When ascertaining whether typicality exists, the district court is "to focus on whether the named representative's claims have the same essential characteristics as the claims of the class at large."[108] A sufficient nexus is established if the claims or defenses of the class and the class representative[s] arise from the same event or pattern or practice and are based on the same legal theory.[109]  Moreover, the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiff and other class members, unless the factual position of the representative markedly differs from that of other members of the class.[110]

---

[104] R.G. *McClung Cotton Co., Inc. v. Cotton Concentration Co.,* 479 S.W.2d 733, 738 (Tex.Civ.App. Dallas 1972); *J. C. Engelman, Inc. v. Sanders Nursery Co .. Inc.,* 140 S.W.2d500, 508 (Tex.Civ.App. El Paso 1940, writ refd)." *Little Darling Corp. v. Aid, Inc.,* 566 S.W.2d 347, 349 (Tex. Civ. App. 1978).

[105] 457 U.S. 147, 157 (1982).

[106]*Kleiner*, 97 F.R.D. at 695.

[107] *East Texas Motor Freight Sys. v. Rodriguez,* 431 U.S. 395, 403 (1977) quoting *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216 (1974).

[108] *Appleyard v.. Wallace,* 754 F.2d 955, 958 (11th Cir.1985).

[109] *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984).

[110] *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984).

In the matter presently before this Honorable Court, the representative Plaintiffs' claims are typical of the claims of the class.  As shown in the attached contracts of the representative Plaintiffs, each of their contracts contains a provision in which Centennial promises to deliver a specific amount of air time, measured in minutes, or pursuant to plans offering a fixed number of minutes for a fixed dollar price.

As noted above, every customer was subject to and entered a standard form contract; this is undisputed and admitted by Centennial's representative in his deposition.[111]  Centennial testified that there was not a single instance where any subscriber had been provided service without a standard form written agreement that contained virtually identical terms and conditions.[112]

The representatives' claims are also typical with respect to breach and damages.  Centennial's own representative admitted that a consumer never receives the amount of airtime that was purchased; thus, the last airtime is a consistent loss and damage to all class members and the class representatives.[113] Each class member claims excess billing by Centennial and damages based on the difference between what price they contracted to pay and the price they were billed, as alleged by the named representatives.  This practice of failing to provide purchased airtime was a standard practice, as Centennial's representative honestly admitted.

4.     *The Representative Parties Will Fairly and Adequately Protect the Interests of the Class*

The heart of the rationale that the class representative must adequately represent the class is the notion that "the court must be satisfied that the class representative, by litigating his or her persona claim, will also necessarily be litigating the common claims shared by the class."[114]  The representative parties will fairly and adequately protect the class interests and the law states that when resolution of the representative's contract claims would resolve the class' contract claims.  Resolution of those claims is clearly common to the class, as evidenced by the extensive consistency amongst contracts and the breach of those contracts.

Counsel for Plaintiffs have extensive litigation experience.  Both the representative Plaintiffs and counsel have interests in common with, and not antagonistic to, the other members of the class.

---

[111] See Exhibit "4," at page [ ].
[112] See Exhibit "4," at page [ ].
[113] See Exhibit "4," at page [ ].
[114] Newberg on Class Actions §1:13, p. 42 (4th Edition) quoting *General Telephone Company v. Falcon*, 457 U.S. 147 (1982).

C.       Plaintiffs Satisfy Rule 23(b) Requirements Because There Would Be Inconsistent Decisions And Common Issues Predominate Over Individual Issues

Rule 23(b) states that a class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:
    (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
    (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests…

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
    (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
    (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
    (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
    (D) the likely difficulties in managing a class action.

The Plaintiffs need only satisfy the requirements of one.[115]  This matter satisfies two of Rule 23(b)'s criteria.  Not proceeding on a class basis raises the risk of inconsistent judgments.  In addition, common questions of law and fact predominate over questions affecting individual class members and a class action is clearly superior to other available methods of adjudication.   The common questions of contractual duty, breach and damages are the core of this action; any of the individual class member issues are subsidiary.

*1.       Risk of Inconsistent Judgments*

This class action satisfies the requirements of FRCP(b)(1)(A).  If individual actions by Centennial's customers were to proceed, they could not help but lead to inconsistent judgments. The sheer volume of actions assures that not all could be consistently adjudicated.

This class action satisfies the requirements of FRCP(b)(1)(B).  If individual actions were pretermitted by early litigation results in a few actions, then adjudications of individual class members would as a practical matter be dispositive of the interests of other members not parties to the adjudications. A few early

---

[115] See *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997).

dispositions in a handful of states would effectively dispose of the claims of all members or, at a minimum, substantially impair or impede their ability to protect their interests.

In fact, the court in *Leyva v. Buley* certified a class for breach of contract under 23(b)(1),(2) and (3), asserting that breach of contract actions held elements of all three methods of class certification under Rule 23.[116]  Finally, matters are to be certified under Rule 23(b)(1) when they are subject to the risk of multiple lawsuits, such as multiple claims for breach of contract, as in the instant matter.[117]

2.    *Common Questions of Law and Fact Predominate Over Questions Affecting Individual Class Members and Class Action Superiority*

In order to maintain a class action under FRCP 23(b)(3), two prerequisites must be satisfied: (1) the questions of law or fact common to the members of the class must predominate over any questions affecting only individual members; and (2) the class action must be superior to other available methods for the fair and efficient adjudication of the controversy.  Rule 23(b)(3) demands that the class satisfy predominance and superiority.[118]

Predominance is "more demanding than the commonality requirement of Rule 23(a)."[119]  It calls for an imbalance that tilts to the class.  It requires "that questions common to the class members predominate over questions affecting only individual members."[120]  However, Rule 23(b)(3) requires that common issues predominate, not that all issues are common to the class.[121]

Superiority requires that class actions "be superior to other available methods for the fair and efficient adjudication of the controversy."[122]  The core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation.[123]  Classes such as this one that are made up of consumers are especially likely to satisfy the predominance

---

[116] 125 F.R.D. 512 (E.D. Wash. 1989).
[117] *In re Federal Skywalk Cases*, 93 F.R.D. 415 (W.D. Mo. 1982).
[118] *Maldonado v. Ochsner*, 237 F.R.D. 145 (E.D. La. 2006) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).
[119] *Bell Atlantic v. AT&T Corp.*, 339 F.3d 394, 301-02 (5th Cir. 2003).
[120] *Bell Atlantic v. AT&T Corp.*, 339 F.3d 394, 301-02 (5th Cir. 2003).
[121] *In re Prudential Insurance Company Sales Practices Litigation*, 148 F.3d 283 (3rd Cir. 1998).
[122] *Malonado, supra* (citing *Amchem*, 521 U.S. at 615, 117 S.Ct. 2231 (internal quotations omitted)).
[123] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).

requirement, according to the Supreme Court.[124]  A class should be certified on a claim-by-claim basis."[125]
The Court must study each claim separately to decide "whether common issues predominate and whether the
class action is the superior method to resolve the controversy [because the Rule] requires an understanding of
the relevant claims, defenses, facts, and substantive law presented in the case."[126]

As superiority seems not as demanding a part of the equation, Plaintiffs will first address
predominance.

a.    <u>Common Questions of Law and Fact Predominate</u>

As shown above, the questions of contractual duty, breach of contract, and method of calculating
damages are common to all class members.  The core questions of duty, breach, and damages methodology
common to millions of contracts plainly predominate over questions affecting individual class members.
These questions, when answered as to one class member, will be answered as to all.[127]

Class action claims arising from contracts satisfy predominance requirements from the outset as
these cases turn on standard form contracts that are executed by all members and the Defendant and this is
consistent across the class.[128]  The fact that these standard form contracts contain consistent terms and
conditions also predominates over any other claims a consumer could bring.[129]  Class actions involving
consumer claims almost definitionally satisfy predominance requirement because the value of the claims
makes the predominance threshold low.[130]  This is particularly true of consumer claims because the nominal
value of each individual claim makes them secondary to the predominant claims of the class as a whole,
according to the Supreme Court.[131]

Although Centennial may have used different standard form contracts at various times, the core term
of those contracts-the promise to furnish a specific amount of air time does not vary.[132]  Centennial's
representative clearly identified that every subscriber had a written contract and that contract governed the

---

[124] *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997).
[125] *Malonado, supra,* (citing *Bertulli,* 242 F.3d at 295).
[126] *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 744 (5th Cir.1996).
[127] *General Telephone Company v. Falcon,* 457 U.S. 147 (1982).
[128] *Smilow* v. *Southwestern Bell Mobile Systems, Inc.,* 323 F.3d 32 (1st Cir. 2003).
[129] *Smilow* v. *Southwestern Bell Mobile Systems, Inc.,* 323 F.3d 32 (1st Cir. 2003).
[130] *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997).
[131] *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997).
[132] See Exhibit "4," at page [ ].

agreement between the parties.[133]  Further, this contract was never subject to negotiation or alteration, it was by definition a standard form contract, using the parlance of the deponent.[134]

In the case before this Court, Centennial has overbilled on multiple contracts in a common course of conduct.  Centennial's alleged breach in every case is based on billing for more minutes than were used by class members.[135]  The breach question is equally central and common in this case.[136]

Centennial's alleged breach in every case is based on billing for more minutes than were used by class members, by billing for unanswered calls and by billing for unanswered and dropped calls.[137]  Centennial's breaches generated damages to be calculated using Centennial's methods of computing air time usage and charges.[138]

Individual damages may vary, but that is no impediment to class certification.  Sampling methodology is fully appropriate to determine class damages.  In this case, the methodology for computing damages will be uniform and readily obtainable by the Call Detail Records, or the AMA records as referred to by Centennial's representative.[139]

Even if variation in damages calculations exists, this is not a basis for denying class action status.[140]  The individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3).  Where, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain.[141]  Based on the commonality of

---

[133] See Exhibit "4," at page [ ].
[134] See Exhibit "4," at page [ ].
[135] *Smilow* v. *Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32 (1st Cir. 2003).
[136] *Kleiner v. First National Bank of Atlanta,* 97 F.R.D. 683 (N.D. Ga. 1983).
[137] See Exhibit "10."
[138] See Exhibit "10."
[139] See Exhibit "4," at page [ ].
[140] *Bartlett* v. *Browning-Ferris Indus. Chem. Serv., Inc.,* 99-494, (La.App. 1 Cir. 11/12/99) 759 So.2d 755, 756.  ("As we have made clear before and reiterate today, the mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover *does not* preclude class certification."); *West* v. G *and H Seed Co., supra; Guillory* v. *Union Pacific Corp., supra,* 817 So.2d at 1238 (although "damages sought by the potential class participants are not of the type that are definitively and easily quantifiable; they require individual proof by each plaintiff", it was abuse of discretion to deny class certification).
[141] *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 456 (3d Cir.1977); *Gold Strike Stamp Co. v. Christensen,* 436 F.2d 791, 798 (10th Cir.1970); 5 Moore, *supra,* § 3.46[2][a], at 23-208 & n. 11 (collecting additional cases); 4 Newberg & Conte, *supra,* § 18.27, at 18-89; *see Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir.1975) ( "The amount of damages is invariably an individual question and does not defeat class action treatment.").

Plaintiffs' allegations, the "difficulties likely to be encountered in the management of a class action" are minimal compared to the difficulties of millions of individual class member lawsuits.

b. <u>*Class Action Superiority*</u>

Proper resolution of the superiority issue requires consideration of the fairness and efficiency of a class action measured by the factors listed in Rule 23 and the multiple objectives of the rule, as contrasted with the other available methods for adjudication of the controversy.[142]  The ability of class members with small claims to obtain relief is "the most dominant justification" for a class action.[143]  It is often used as the sole rationale for finding superiority.[144]

> While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.[145]
> …
> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.[146]

The class action mechanism in *this* case is overwhelmingly superior to alternatives.  Centennial, according to the allegations, has deprived most class members of relatively small amounts of money through its overbilling practice. Few, if any, Plaintiffs would have the monetary incentive to retain counsel for the individually modest amounts at stake. And few attorneys would have the necessary monetary incentives to accept such cases.  For literally millions of class members, relief must come through a class action or there will be no relief at all.

Due to the relatively small stakes for individual class members, Rule 23(b)(3) also weighs in favor of class certification.  The financial interests' of class members in individually controlling their actions is capped by the amounts individual class members have at stake.  Since these amounts are relatively small, individual

---

[142] Newberg on Class Actions §4:45, p. 335 (4th Edition).
[143] *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997).
[144] *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997).
[145] *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997).
[146] *Mace v. v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997).

class members' interests in controlling separate actions pale in comparison to their interests in having the only financially realistically available course of action-a class action.

### IV. CONCLUSION

Centennial's alleged massive contractual cheating is the kind of behavior that supplies the *raison d'etre* for the class action mechanism. Millions of customers are deprived of small amounts by corporate cheating unlikely to be challenged by enough victims to stop the practice. Without class action certification, corporate behavior of this kind goes largely unchecked. The need for class action certification is as strong, or stronger, than in other certified cases. The overwhelming predominance of (1) Centennial's commonly assumed contractual duty, (2) common systematic breach, and (2) commonly calculable damages warrant this Court's exercising its sound discretion to certify the class.

Respectfully:
**Law Offices of D. Patrick Daniel, Jr., LLC**

D. PATRICK DANIEL, JR., T.A. No. 27753
900 South College Road, Suite 202 (70503)
Post Office Drawer 51709
Lafayette, Louisiana 70505-1709
Telephone:      337.232.7516
Telefax:         337.261.9589
Email:           patrick@dpdlawfirm.com
**ATTORNEY FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has been served on all counsel of record, from Lafayette, Louisiana on August 6, 2010, in this proceeding by:

|   | Hand Delivery |   | Prepaid U.S./Certified Mail |
|---|---|---|---|
| **X** | Facsimile/Electronic Mail |   | Federal Express/Courier |

D. PATRICK DANIEL, JR.