UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

Lafayette Division

-----------------------------------------------------------------X
                                                      :

IBERIA CREDIT BUREAU, INC. d/b/a      :
INFORMATION SERVICES, WARDELL X.  :
GERHARDT, AL THERIOT CONSTRUCTION,  :
INC., ET AL.,                             :    Civil Action
                                               :    No. 6:01CV2148

                               Plaintiffs,    :
                                             :    Judge Ivan R. Lemelle

                - versus -              :
                                           :    Mag. Judge Methvin

CINGULAR WIRELESS, L.L.C., formerly   :
known as BELL SOUTH MOBILITY, ET AL.,  :
                                           :
                         Defendants.  :
                                           :
-----------------------------------------------------------------X

POST-HEARING MEMORANDUM OF DEFENDANTS
CENTENNIAL BEAUREGARD CELLULAR LLC, CENTENNIAL
COMMUNICATIONS CORPORATION, CENTENNIAL HAMMOND
CELLULAR LLC, AND CENTENNIAL MOREHOUSE CELLULAR LLC
IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Mark A. Balkin
Joseph C. Chautin, III
HARDY, CAREY, CHAUTIN &
BALKIN, LLP
1080 West Causeway Approach
Mandeville, Louisiana 70005
(985) 629-0777

Attorneys for Defendant
Centennial Beauregard Cellular, LLC

Of Counsel:

Christopher M. Mason
NIXON PEABODY LLP
437 Madison Avenue
New York, New York 10022
(212) 940-3000

January 14, 2011

13286031.9

Table of Contents

                                                                                    Page

Table of Authorities ................................................................................. ii

Preliminary Statement ............................................................................... 1

Argument ................................................................................................... 4

I.      THE CLAIMS OF THE PROPOSED CLASS
        REPRESENTATIVES ARE NOT TYPICAL
        OF THE CLAIMS OF EACH OTHER, LET
        ALONE OTHER PUTATIVE CLASS MEMBERS ...................................... 6

II.     COMMON QUESTIONS WOULD NOT
        PREDOMINATE OVER INDIVIDUAL ISSUES
        IN THE CLASS OR CLASSES PROPOSED BY
        PLAINTIFFS ................................................................................... 11

        A.      Individual Contract Issues Here Would
                Overwhelm Any Common Issues ......................................... 11

        B.      Individual Contract Defenses Here Would
                Overwhelm Any Common Issues ......................................... 14

        C.      Individual Issues of the Authority or Lack
                of Authority of Purported Class Members To
                Participate In this Case Would Overwhelm
                Any Common Issues ............................................................ 17

        D.      Individual Arbitration Issues Here Would
                Overwhelm Any Common Issues ......................................... 19

III.    THE CERTIFICATION OF A SETTLEMENT-ONLY
        CLASS IN AN EARLIER CASE BY DIFFERENT
        CLASS MEMBERS IS NOT *RES JUDICATA* AS TO
        CERTIFICATION OF THE CLASS OR CLASSES
        NOW SOUGHT BY PLAINTIFFS ....................................................... 20

Conclusion ................................................................................................ 25

Table of Authorities

<u>Cases</u>                                                                                                    <u>Pages</u>

*A2D Techs. Inc. v. MJ Sys. Inc.*,
    269 Fed. App'x 537 (5th Cir. 2008) ....................................................................... 10

*Action Fin. Corp. v. Nichols*,
    180 So. 2d 81 (La. Ct. App. 1965)....................................................................... 12 n.15

*Allison v. Citgo Petroleum Corp.*,
    151 F.3d 402 (5th Cir. 1998) ................................................................................. 14

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)........................................................................................... 4, 22, 24

*Applewhite v. Reichhold Chems., Inc.*,
    67 F.3d 571 (5th Cir. 1995) ..................................................................................... 5

*Bell v. Ascendant Solutions, Inc.*,
    422 F.3d 307 (5th Cir. 2005) .................................................................................... 5

*Berger v. Compaq Computer Corp.*,
    257 F.3d 475 (5th Cir. 2001) ................................................................................. 3, 5, 6

*Bott v. J.F. Shea Co.*,
    299 F.3d 508 (5th Cir. 2002) ................................................................................. 15 n.21

*Cargill, Inc. v. Kopalnia Rydultowy*
    *Motor Vessel,* 304 Fed. App'x 278
    (5th Cir. 2008)................................................................................................... 12 n.15

*Castano v. American Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996) ................................................................................. 5, 14 n.20

*Chancellor v. Nationwide Credit, Inc.*,
    No. 98 C 4431, 1999 U.S. Dist.
    LEXIS 6211 (N.D. Ill. Apr. 6, 1999)..................................................................... 22

*Chris Albritton Constr. Co. v.*
    *Pitney Bowes, Inc.*, 304 F.3d 527
    (5th Cir. 2002).................................................................................................. 15

*Columbus Drywall & Insulation, Inc. v.*
    *Masco Corp.*, 258 F.R.D. 545
    (N.D. Ga. 2007) ............................................................................................... 23

Cases                                                                                          Pages

*Coopers & Lybrand v. Livesay,*
    437 U.S. 463 (1978)..................................................................................    5

*Corley v. Entergy Corp*.,
    222 F.R.D. 316 (E.D. Tex. 2004),
    *aff'd*, 152 Fed. App'x. 350 (5th Cir. 2005).........................................    4 n.7

*Corley v. Entergy Corp.*,
    220 F.R.D. 478 (E.D. Tex. 2004)...........................................................    4, 5

*Decker v. McDonald*,
    No. 5:09cv27, 2010 U.S. Dist.
    LEXIS 34400 (E.D. Tex. Jan. 11, 2010)..............................................    22

*Deiter v. Microsoft Corp.*,
    436 F.3d 461 (4th Cir. 2006) ...............................................................    8

*Dorsey v. Northern Life Ins. Co.*,
    No. 04-0342 Section: I/3,
    2005 U.S. Dist. LEXIS 17742
    (E.D. La. Aug. 15, 2005) .....................................................................    10

*Dukes v. Wal-Mart Stores, Inc.*,
    603 F.3d 571 (9th Cir.), *cert. granted*,
    178 L. Ed. 2d 530 (2010)....................................................................    4 n.7

*General Tel. Co. of the Sw. v.*
    *Falcon*, 457 U.S. 147 (1982) .............................................................    4 n.7, 5, 6, 7

*Grand Acadian, Inc. v Fluor Corp.*,
    No. 2:07 CV 295, 2008 U.S. Dist.
    LEXIS 40151 (W.D. La. May 19, 2008) ..............................................    23 n.29

*Harper v. Home Indem. Co.*,
    140 So. 2d 653 (La. Ct. App. 1962) .....................................................    12 n.15

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................    22, 23

*In re Milk Prods. Antitrust Litig*.,
    195 F.3d 430 (8th Cir. 1999),
    *cert. denied*, 529 U.S. 1038 (2000).....................................................    15 n.21

*In re Vioxx Prods. Liab. Litig.*,
    2008 U.S. Dist. LEXIS 95097
    (E.D. La. Oct. 21, 2008)......................................................................    7 n.10

| Cases | Pages |
|---|---|
| *Johnson v. Mansfield Hardwood Lumber Co.*, 143 F. Supp. 826 (W.D. La. 1956) | 15 |
| *Lambert v. Board of Comm'rs of the Orleans Levee Dist.*, No. 05-5931 SECTION: R(4), 2008 U.S. Dist. LEXIS 68254 (E.D. La. Sept. 10, 2008) | 7 |
| *Lewis v. Bloomsburg Mills Inc.*, 773 F.2d 561 (4th Cir. 1985) | 22 |
| *Mann v. GTE Mobilnet, Inc.*, 730 So. 2d 150 (Ala. 1999) | 10 |
| *Nichols v. Mobile Bd. of Realtors, Inc.*, 675 F.2d 671 (5th Cir. 1982) | 14 |
| *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (U.S. 1999) | 7 n.10 |
| *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732 (5th Cir. 2003) | 14 n.20 |
| *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) | 23 n.29 |
| *Robinson v. Texas Auto. Dealers Ass'n*, 387 F.3d 416 (5th Cir. 2004) | 7 n.10 |
| *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425 (5th Cir. 2000) | 6 |
| *Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010) | 20 |
| *Swoope v. BellSouth Telecomms.*, Nos. 1:97cv181-D-D & 1:97cv359-D-D, 1998 U.S. Dist. LEXIS 11416 (N.D. Miss. June 23, 1998) | 17 |
| *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830 (E.D. La. 2007) | 24 n.30 |
| *Unger v. Amedisys Inc.*, 401 F.3d 316 (5th Cir. 2005) | 5 |

Cases                                                                    Pages

*Wal-Mart Stores, Inc. v. Dukes*,
    178 L. Ed. 2d 530 (2010) ................................................................ 4 n.7

*Wethington v. Purdue Pharma LP*,
    218 F.R.D. 577 (S.D. Ohio 2003) ................................................... 23 n.29


Statutes and Rules

Fed. R. Civ. P. 12 ............................................................................ 2

Fed. R. Civ. P. 23 ............................................................................ *passim*

9 U.S.C.A. § 2 (West 2010) ............................................................ 19

9 U.S.C.A. § 3 (West 2010) ............................................................ 19

9 U.S.C.A. § 4 (West 2010) ............................................................ 19

La. Rev. Stat. tit. 42, Ann. § 261-64 (2010) ................................. 19

La. Rev. Stat. tit. 42, Ann § 263 (2010) ........................................ 18, 19


Secondary Sources

5 James Wm. Moore *et al*., Moore's
    Federal Practice ¶ 23.82 (3d ed. 2005) ..................................... 5

7A Wright & Miller, Federal Practice and
    Procedure § 1764 (2008) ............................................................. 7

Defendants Centennial Beauregard Cellular LLC, Centennial Communications Corporation; Centennial Hammond Cellular LLC, and Centennial Morehouse Cellular LLC (the "Centennial Defendants") respectfully submit this post-hearing memorandum in opposition to Plaintiffs' motion to certify a class or classes of Louisiana governmental entities from 1991 to the present and to appoint Sheriff Louis M. Ackal of Iberia Parish (the "Sheriff") and the Town of Delcambre ("Delcambre") as representatives of that class or classes.[1]

<u>Preliminary Statement</u>

On December 14, 2010, this Court held a hearing on class certification and certain related motions and cross motions.  With respect to the Centennial Defendants, the Court first denied Plaintiffs' motion to amend their complaint to expand their proposed class or classes beyond the State of Louisiana.  *See* Transcript of Oral Argument, *Iberia Credit Bureau, Inc. v. Cingular Wireless, L.L.C.*, No. 6:01CV2148 at 6 (W.D. La. Dec. 14, 2010) (hereinafter "Tr. at [page]); Order, *Iberia Credit Bureau, Inc. v. Cingular Wireless, L.L.C.*, No. 6:01CV2148 at 1 (W.D. La. Dec. 14, 2010) [copy at Docket Entry ("DE") 612].[2]  The Court then denied in part and granted in part a motion by the Centennial Defendants to dismiss or stay based on a written arbitration clause in contracts with Plaintiffs Town of Delcambre ("Delcambre") and City of Jeanerette ("Jeanerette") from 2003 forward.  The Court refused to dismiss the claims of those Plaintiffs on that ground, but upheld the arbitration clause by granting a stay against Jeanerette

---

[1] At oral argument on the motions for class certification it appeared that Plaintiffs were no longer seeking to include non-governmental customers from October 17, 2007 to the present in this Louisiana-only class.  To the extent Plaintiffs do still seek to include such persons in a class or classes, the Centennial Defendants address why that would be impossible *infra* at 8-9.

[2] Subsequent references to documents in the electronic docket of this case will be by name of the document, its entry date the first time it is cited, and its docket entry number.

pending arbitration of its claims.  *See* Tr. at 6-7; Order at 1-2 [DE 612].[3]  Accordingly, only the

Sheriff and Delcambre can now possibly serve as class representatives of the class or classes

sought by Plaintiffs.

       Finally, the Court granted in part and denied in part the Centennial Defendants'

motion to dismiss the new, late-served Defendants in this case.  *See* Tr. at 7; *accord* Order at 2

[DE 612].[4]  (The Court apparently denied, without prejudice, the Centennial Defendants' cross-

motion pursuant to Federal Rule of Civil Procedure 12(c) to dismiss the claims of the Sheriff and

---

[3] The Court did not explain why it denied the motion to stay as to Delcambre, *see* Order at 2 [DE 612], although it may have been because no copy of a Delcambre contract with the relevant arbitration clause has yet been found.  Delcambre lost a number of documents to flooding during hurricanes Rita and Ike.  *See* Ayo Tr. at 39-40, 89-90.  (The relevant pages of the proposed class representatives' depositions from August 9, 2010 cited in this memorandum are attached as Ex. C (Ayo Tr.) to the Declaration of Mark A. Balkin dated September 7, 2010 ("Balkin Dec. I") [DE 536-2] and Ex. C (Elledge Tr.) [DE 589-5] to the Declaration of Mark A. Balkin dated September 17, 2010 ("Balkin Dec. II") [DE 589-2].)  The only contract found and produced by Delcambre began in December, 2002 and would have ended in December, 2004. *See* Balkin Dec. I Exs. M, N [DE 536-2]; *see also* Ayo Tr. at 41, 44 [DE 536-2].  But other records show that Delcambre upgraded its service with a new, two year contract in July 2004. *See* Balkin Dec. I Ex. O [DE 536-2].  Presuming this was done at a retail location, Delcambre would have received "a copy of the current contract terms and conditions."  Transcript of Deposition of Francis P. Hunt dated July 29, 2010 ("Hunt Tr.") at 94 (relevant pages attached as Balkin I Ex. Q [DE 536-2]).  By 2004, all such contracts contained the amended arbitration clause upheld by this Court as to Jeanerette.  Declaration of Tony L. Wolk dated September 1, 2010 ("Wolk Dec.") ¶¶ 6-8 & Exs. C-F [DE 536-3].

[4] Plaintiffs have asked this Court to reconsider its decision on this point.  *See* Report to this Honorable Court Pursuant to Order Dated December 22, 2010 [DE 625].  As has become their habit, that filing contains numerous misstatements.  For example, counsel for the Centennial Defendants does not have any "confusion" as to what the Court ordered.  The only confusion has been by Plaintiffs' counsel, who have asserted that "the Court did not dismiss any entities. . . . Centennial's argument [for] that dismissal for untimely service was not accepted by the Court and all named entities remained."  *See* e-mail from Patrick Daniel dated Jan. 10, 2011 attached as Exhibit A to this memorandum.  That is clearly *not* what the Court ordered.  There is therefore no reason for the Court to readdress the issue now unless it would be, as the Centennial Defendants have urged before, *see* Memorandum of Defendants in Support of Motion To Dismiss, at 4-6 (Nov. 3, 2010) [DE 588-11], to hold in accord with the weight of authority that Plaintiffs' extremely late service on all the newly-added Defendants was, in fact, not valid.

Delcambre.  *See* Tr. at 7.)  As a result, the Centennial Defendants against which Plaintiffs can seek class certification currently consist of the four entities listed at the beginning of this memorandum—three Louisiana service providers that *could* in theory have contracted with members of the proposed class or classes, and one holding company that did *not* contract with customers for cellular service.[5]

After hearing argument on Plaintiffs' motion for class certification as narrowed by these rulings, the Court directed the parties to submit post-hearing briefs on two specific elements of Federal Rule of Civil Procedure 23, each of which, *see, e.g., Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481 (5th Cir. 2001), Plaintiffs must prove:  typicality (that is, whether the claims of the proposed class representatives are typical of the claims of the other proposed class members), *see* Tr. at 108; Order at 3 [DE 612], and predominance of common questions (that is, whether common questions predominate over individual questions in the proposed class or classes), *see* Tr. at 108; Order at 3 [DE 612]; *see also* Tr. at 111 (stating that "[p]redominance to me is a big thing in this case" in response to a question as to whether, by commonality, the Court meant "whether common questions predominate over individual questions").  As discussed further below, Plaintiffs cannot carry their burden as to either element and class certification must therefore be denied.

The Court also asked the Centennial Defendants to brief further the issue of whether the settlement in *Abrusley v. Centennial Lafayette Cellular Corp.*, and in particular the certification of a class for settlement purposes only there, would have "binding effect regarding

_____

[5] No Centennial entity or combination of entities ever operated state-wide in Louisiana. Most notably, no Centennial entity had a license for cellular service in and around New Orleans, Baton Rouge, Shreveport, or Monroe.  *See* Balkin Dec. II Ex. F at 56-57 & § 1 (geographic provisions of tariffs) [DE 589-9].

class certification" here.  Tr. at 108; Order at 3 [DE 612]; *see* Order Preliminarily Approving

Proposed Settlement, *Abrusley v. Centennial Lafayette Cellular Corp.*, No. C-99-380, at ¶ 2 (La.

Dist. Ct. Oct. 19, 2007) (certifying class for settlement purposes only).[6]  As discussed further

below, no *res judicata* effect on the issue of class certification can arise from the certification, for

settlement purposes only, of that different class with different class members.[7]

<u>Argument</u>

Any plaintiff seeking to certify a class must satisfy all of the four threshold

requirements of Federal Rule of Civil Procedure 23(a), *and* at least one of the further

requirements of Rule 23(b) (here, Rule 23(b)(1) or the multiple subparts of Rule 23(b)(3)).  *See,*

*e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997); *Corley v. Entergy Corp.*,

---

[6] A copy of this Order is attached as Exhibit C to the Declaration of Christopher M. Mason dated November 24, 2008 ("Mason Abrusley Dec.") [DE 363-2].

[7] The Court encouraged all parties to consider in their briefing the pending case of *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir.) (*en banc*), *cert. granted,* 178 L. Ed. 2d 530 (2010).  *See* Tr. at 8-9.  The Ninth Circuit's controversial decision in *Dukes* has not been followed in the Fifth Circuit and it is unlikely that the United States Supreme Court will alter the law of the Fifth Circuit applicable to this case in deciding it.  The Supreme Court granted *certiorari* to address only two issues:  when claims for substantial monetary relief can be certified under Federal Rule of Civil Procedure 23(b)(2), and whether the particular class certification in *Dukes* pursuant to Rule 23(b)(2) also conformed to the requirements of Rule 23(a).  *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 178 L. Ed. 2d 530 (2010).  The second issue may indicate an interest by the Supreme Court in clarifying or emphasizing the limits of the elements of Rule 23(a) such as typicality, limits that the Ninth Circuit stretched beyond recognition according to the dissenters in the 6-to-5 *en banc* decision.  As the dissenters argued, "the district court" in the *Dukes* case "abused its discretion . . . by failing to follow the Supreme Court's direction to 'evaluate carefully the legitimacy of the name plaintiff's plea that he is a proper class representative under Rule 23(a)'" and also by failing "to ensure 'after a rigorous analysis' that the prerequisites of Rule 23(a) have been met."  603 F.3d at 631 (quoting *General Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 160, 161 (1982)).  No case decided by the Fifth Circuit has ever approved of a class such as the one in the *Dukes* case.  *Cf., e.g., Corley v. Entergy Corp.*, 222 F.R.D. 316, 323 (E.D. Tex. 2004), *aff'd*, 152 Fed. App'x. 350 (5th Cir. 2005) (rejecting certification of a Rule 23(b)(2) class with disparate damages).

220 F.R.D. 478, 482-85 (E.D. Tex. 2004).[8]  In other words, the party who seeks certification

bears the burden of proving each of the requisite elements of Rule 23.  *E.g., Berger v. Compaq*

*Computer Corp.*, 257 F.3d 475, 481 (5th Cir. 2001); *Castano v. American Tobacco Co.*, 84 F.3d

734, 740 (5th Cir. 1996); *Applewhite v. Reichhold Chems., Inc.,* 67 F.3d 571, 573 (5th Cir.

1995).

             In determining whether a plaintiff has met this high standard, "the court does *not*

accept the class allegations in the complaint as true . . . ."  5 James Wm. Moore *et al*., Moore's

Federal Practice ¶ 23.82 (3d ed. 2005) (emphasis added).  Instead, it must conduct a "rigorous

analysis" of the evidence and argument offered by the plaintiff for each element of Rule 23.

*E.g., Castano*, 84 F.3d at 740; *Corley*, 220 F.R.D. at 482; *see also, e.g., Bell v. Ascendant*

*Solutions, Inc.*, 422 F.3d 307, 312-13 (5th Cir. 2005); *Unger v. Amedisys Inc.*, 401 F.3d 316, 321

(5th Cir. 2005).  This is particularly true with respect to the two elements on which the Court has

asked the parties to focus now—typicality and predominance of common issues.  As the United

States Supreme Court has said, the "[e]valuation of many . . . class action questions is intimately

involved with the merits of the claims.  The typicality of the representative's claims or

defenses . . . and the presence of common questions of law or fact are obvious examples."

*Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469 & n.12 (1978) (citations omitted); *see also*

*e.g., General Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 160 (1982).

---

        [8] While Plaintiffs originally claimed that they would show that prosecution of separate
actions would create a risk of "adjudications with respect to individual members of the class that
would be as a practical matter dispositive of the interests of the other members not parties to
adjudications or would substantially impair or impede their ability to protect their interests",
Plaintiffs' Memorandum in Support of Motion for Class Certification ("Plaintiffs' Class Br.")
at 1 [DE 515-1] (citing Fed. R. Civ. P. 23(b)(1)), they never identified any factual reason why
this would be so.  *See* Plaintiffs' Class Br. at 18-19 [DE 515-1].  Nor did they raise this issue at
oral argument.

If this Court properly applies these standards, it must conclude that Plaintiffs have not carried their heavy burden with respect to either of these issues.  Nor have Plaintiffs carried their burden of proving the applicability of any theory of *res judicata* supposedly flowing from the certification, for settlement purposes only, of a different class of different class members in the *Abrusley* case in state court several years ago.  *See St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 437 (5th Cir. 2000) (explaining that "the party urging res judicata has the burden of proving each essential element by a preponderance of the evidence") (applying Louisiana law).  Thus, this Court cannot certify the class or classes Plaintiffs have demanded.  *See, e.g., Berger*, 257 F.3d at 481-82 (plaintiff must carry its burden of proof on all elements of class certification or certification will be denied).

POINT I

THE CLAIMS OF THE PROPOSED CLASS REPRESENTATIVES ARE NOT TYPICAL OF THE CLAIMS OF EACH OTHER, LET ALONE OTHER PUTATIVE CLASS MEMBERS

Plaintiffs' claim in this case is that the Centennial Defendants breached their contractual obligations to each class member by "'round[ing] up' all connection time to the next higher full minute" and "charging . . . for . . . non-communication time" (which Plaintiffs have identified as charging for certain unanswered or "dropped" calls).[9]  The Centennial Defendants do not deny, for example, that customers billed for cellular service under the Centennial Wireless

_____

[9] Plaintiffs Class Br. Ex. 10 at ¶ 43 [DE 515-11]; Plaintiffs' Fourth Amending and Superseding Complaint for Class Action Certification and Damages ¶ 43 (Apr. 14, 2003) [DE 214]; *see* Sixth Supplemental and Amending Complaint for Damages ¶ I (Jan. 25, 2010) (adopting prior allegations) [DE 438-4]; Amending and Supplemental Complaint at 1 (Nov. 2, 2009) (same) [DE 433].

brand all had their minutes "rounded up", including minutes that were shorter than full minutes because a call was somehow "dropped".  This means that there may be at least one common issue in this case.  But despite Plaintiffs' arguments that "the commonality and typicality requirements" for class certification "tend to merge", Plaintiffs' Class Br. at 16 [DE 515-1] (quoting *General Tel. Co. of the Sw.,* 457 U.S. at 157 n.13), in fact typicality is an entirely separate, and more difficult, requirement to meet.[10]  It expressly seeks "to 'screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class *even though* common issues of law and fact are present.'" *Lambert v. Board of Comm'rs of the Orleans Levee Dist.*, No. 05-5931 SECTION: R(4), 2008 U.S. Dist. LEXIS 68254, at *18-19 (E.D. La. Sept. 10, 2008) (quoting 7A Wright & Miller, Federal Practice and Procedure § 1764 (2008)) (emphasis added).  Here, the two proposed class representatives—Delcambre, through its outside counsel, Ted Ayo, and the Sheriff, through his in-house counsel Steve Elledge—*are* in "markedly" different positions with respect to their claims than most other proposed class members.

First, each of the two proposed class representatives here represents a different government entity.  Plaintiffs have offered no evidence that any other government entity in Louisiana used the same contracting processes as those two entities.  Even as between just Delcambre and the Sheriff, the contracting processes and outcomes appear to be different:  the Sheriff, for example, clearly bargained for different prices and volumes of "included minutes" as

_____

[10] As the Fifth Circuit noted in *Robinson v. Texas Auto. Dealers Ass'n*, 387 F.3d 416, 421 (5th Cir. 2004), the other requirements of Rule 23 are "far more demanding" than mere commonality.  Among other things, "[w]hile the commonality requirement might be satisfied by *one* unifying factual or legal question, the typicality requirement may not."  *In re Vioxx Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 95097, at *41 (E.D. La. Oct. 21, 2008) (citation omitted) (emphasis added); *see also, e.g., Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 828 n.6 (1999).

well as for special billing treatment.[11]  Other governments may have done the same, or not—Plaintiffs have certainly offered no proof on the issue, even as to Delcambre.  As Mr. Elledge testified, for example, he had "no understanding about whether the way the Sheriff was billed for its wireless service from Centennial was the same as the way other government entities were billed . . . ."  Elledge Tr. at 62 [DE 589-5].

Second, both Delcambre and the Sheriff are in the same geographic territory, the one served by Centennial Beauregard or its predecessor.  *See* Balkin Dec. II Ex. F at 56 & § 1 [DE 589-9] (geographic provisions of tariffs).  Plaintiffs have not identified any governmental entity as a class representative that dealt with any *other* Centennial Defendant.  Thus, the proposed representatives here are typical only of class members who dealt with one out of the three Centennial operating entities named as Defendants.

Third, to the extent that, despite their oral argument, Plaintiffs still seek to certify a Louisiana class that includes not only governmental entities from 1991 to the present, but consumers from October 17, 2007 to the present, *see, e.g.*, Plaintiffs' Class Br. at 3 [DE 515-1] the contracts into which the proposed class representatives entered were different than those of individual consumers.  *See, e.g.*, Elledge Tr. at 80-84 [DE 589-5] & Exs. 59, 61-64 [DE 589-7] (bid proposals).  The ability of the proposed class representatives to buy in bulk put them in a position different than the position of individual consumers—and they have not proposed adding any individual consumer now as a class representative.  *See, e.g., Deiter v. Microsoft Corp.*, 436 F.3d 461, 468 (4th Cir. 2006) (affirming exclusion of businesses from consumer class because

---

[11] *See* Elledge Tr. at 64, 66 [DE 589-5] (special billing for the Sheriff); Plaintiffs' Class Br. Ex. 9 [DE 515-10] (sample of the special billing provided to the Sheriff); Elledge Tr. at 73-74, 77-86 [DE 589-5] & Exs. 59-65 [DE 589-7] (request for proposal by the Sheriff and responses from various companies for different cellular services).

businesses negotiated their deals in a "different competitive context" than individual consumers). It is indisputable, for example, that Centennial Beauregard provided billing services to the Sheriff that it "wouldn't do . . . for an individual consumer . . . ."  Hunt Tr. at 149-50 [DE 589-11].

   Fourth, while Plaintiffs have argued that the "contracts of the representative[s]" here are typical because each of them "contains a provision in which Centennial promises to deliver a specific amount of air time, measured in minutes, or pursuant to plans offering a fixed number of minutes for a fixed dollar price", Plaintiffs' Class Br. at 17 [DE 515-1], and that the Centennial Defendants breached this promise by "rounding up", in fact, Plaintiffs have offered no evidence in any of those contracts that any Centennial Defendant promised any fixed "number of minutes" to the proposed class representatives.  *See, e.g.,* Plaintiffs' Class Br. at Ex. 6 [DE 515-7].  For example, the pre-printed face and terms and conditions of most of the Sheriffs' contract forms do not use the word "minute" anywhere.  Thus, the Sheriff's claims based on these contracts cannot be typical of the claims of class members who, according to Plaintiffs, have contracts that promise "a specific amount of air time, measured in minutes."  Plaintiffs' Class Br. at 17 [DE 515-1].[12]

   Of course, after 2001, the Sheriff's contracts *did* mention minutes—but only by providing that "AIRTIME AND USAGE IS ROUNDED UP TO THE NEXT FULL MINUTE

---

[12] In contract terms and conditions earlier than October, 2001, the word "minutes" does appear in the tariff language incorporated by reference in each contract.  *See, e.g.,* Balkin Dec. II Ex. D (Depo. Ex. 37 at 2 § 7, 4 § 7, 6 § 7, 8 § 7, 10 § 7, 12 § 7) [DE 589-6]; *accord, e.g.,* Balkin Dec. II Ex. D (Depo. Exs. 38-39 at 2 § 7; 40-45 at 2 § 6; 46 at 2 § 6, 4 § 6, 6 § 6; 48 at 2 § 6) [DE 589-6].  But that language also expressly states that "[u]sage is charged in increments of one minute. . . . [and] each call is rounded to the next minute for billing purposes. . . .  The minimum usage on each charged call will be one minute."  Balkin Dec. II Ex. F § 4.2(D) [DE 589-9] (all versions of tariff).

INCREMENT", that "CHARGEABLE TIME" runs from "SEND" to "A COUPLE OF

SECONDS AFTER YOU PRESS END", and that billing could occur for "BUSY SIGNALS OR

UNANSWERED CALLS" of "60 SECONDS" or more.[13]  Indeed, in this respect, Delcambre's

claims are even less typical of other proposed class members' than those of the Sheriff, because

*all* of Delcambre's contracts contain these express disclosures.[14]  If this contract language is

clear, it bars many of the claims by the Sheriff and all of the claims by Delcambre.  *See, e.g.*,

*Dorsey v. Northern Life Ins. Co.*, No. 04-0342 Section: I/3, 2005 U.S. Dist. LEXIS 17742, at

*30-31 (E.D. La. Aug. 12, 2005) (where contract expressly permits activity a plaintiff claims is a

breach, no cause of action exists); *see also, e.g., A2D Techs. Inc. v. MJ Sys. Inc.*, 269 Fed. App'x

537, 540-41 (5th Cir. 2008).  This would make the claims of those proposed class representatives

not typical of the claims of purported class members whose contracts do not have such language.

And if this contract language is not clear, then no class could be certified for a different reason:

the Court would have to "question every putative class member about his or her understanding of

the [contract term] . . . to decide whether that customer's contract was breached."  *Mann v. GTE

Mobilnet, Inc.*, 730 So. 2d 150, 153 (Ala. 1999).

　　　　As these four examples indicate, this Court was correct to doubt whether the two

class representatives here can satisfy the typicality requirements of Federal Rule of Civil

---

[13] *See* Plaintiffs' Class Br. Ex. 6 at p.24 § 3 [DE 515-7]; *accord, e.g.,* Balkin Dec. II Ex. D (Depo. Exs.51, 58 at 2 § 3) [DE 589-7] (2001 terms and conditions); Balkin Dec. II Ex. D (Depo. Ex. 68 § 5) [DE 589-7] (2003 terms and conditions); Balkin Dec. II Ex. D (Depo. Ex. 69 at 1 § 5) [DE 589-7] (2007 terms and conditions).

[14] *See* Balkin Dec. II Ex. D (Depo. Ex. 83 § 3) [DE 589-7] (2001 terms and conditions); Balkin Dec. II Ex. D (Depo. Ex. 2 at 2 § 3) [De 589-6] (2001 terms and conditions); Balkin Dec. II Ex. D (Depo. Ex. 33 at 1 § 5) [DE 589-6] (undated); Balkin Dec. II Ex. D (Depo. Ex. 36 at 3 § 5) [DE 589-6] (2009 contract); *see also* Ayo Tr. at 79 [DE 589-3] (testimony that other contracts by Delcambre also contained such language).

Procedure 23(a)(3).  Those proposed representatives bargained for different contract benefits; dealt with only one of the Centennial Defendants; had very different bargaining power than consumers (if Plaintiffs still seek to include consumers in their class or classes); and had no contracts that could have been breached to the extent they mentioned "minutes", contrary to the supposed claims by other class members.  Thus, Delcambre and the Sheriff simply do not have claims sufficiently typical of all other putative class members to represent them in this case.

POINT II

COMMON QUESTIONS WOULD NOT PREDOMINATE OVER INDIVIDUAL ISSUES IN THE CLASS OR CLASSES PROPOSED BY PLAINTIFFS

This Court was also right to question whether Plaintiffs have proven "that the questions of law or fact common to class members predominate over any questions affecting only individual members" or "that a class action is superior to all other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  There are many reasons why Plaintiffs here have not carried, and cannot carry, that burden.  The first four that come to mind are individual contract issues, individual contract defenses, individual issues of class member authority, and individual arbitration issues.  The need to deal with any one of those four would overwhelm any common question in this case.  The presence of all of them makes certification unthinkable.

A.    *Individual Contract Issues Here Would Overwhelm Any Common Issues.*

There is no question that there are different contracts for the different purported class members in this case.  As Plaintiffs conceded at oral argument, *see* Tr. at 31-32, some of those contracts have express language on "rounding" up; some only incorporate it by reference

from relevant tariffs.[15]  Some have old arbitration clauses that the Fifth Circuit has declined to enforce; some have new arbitration clauses that this Court has upheld.[16]  Some were modified by hand; others were not.[17]  Some were presented electronically; others were signed in hard copy.[18]  Each contract difference raises individual issues.[19]

There is also no question that different putative class members had different combinations of these different contracts.  Some had only one contract.  Some had different ones at different times.  Each different combination raises individual issues.  As the Court correctly noted during oral argument, "there's various contracts and there's various ways that the contracts are presented to the customers or not presented, various ways that the customers signed the contracts, electronically, hard copy, what have you, attached as references to other material, incorporated in material in the terms and conditions of the contract."  Tr. at 30.

---

[15] *Compare, e.g.,* Balkin Dec. II Ex. D (Depo. Exs. 58 at 2 § 3; 69 at 1 § 5; 83 at 2 § 3) [DE 589-7] *with, e.g.,* Balkin Dec. II Ex. D (Depo. Exs. 37 at 2 § 7, 4 § 7, 6 § 7, 8 § 7, 10 § 7, 12 § 7; 38-39 at 2 § 7; 40-45 at 2 § 6; 46 at 2 § 6, 4 § 6, 6 § 6; 48 at 2 § 6) [DE 589-6].  As "it has been uniformly held" in Louisiana, language incorporated by reference into a contract from another document "become[s] a part of the agreement between the parties with the same force and effect as if the provisions had been contained in the basic contract . . . ."  *Action Fin. Corp. v. Nichols,* 180 So. 2d 81, 83 (La. Ct. App. 1965); *see also Cargill, Inc. v. Kopalnia Rydultowy Motor Vessel,* 304 Fed. App'x 278, 282 (5th Cir. 2008).  Indeed, the incorporated provisions will trump the language in the basic contract in the event of any conflict between the two.  *E.g., Harper v. Home Indem. Co.,* 140 So. 2d 653, 658 (La. Ct. App. 1962).

[16] *Compare, e.g.,* Balkin Dec. II Ex. D (Depo. Exs. 58 at 2 § 22; 83 at 2 § 22) [DE 589-7] *with* Balkin Dec. II Ex. D (Depo. Exs. 68-69 at 2 § 20) [DE 589-7].

[17] *Compare, e.g.,* Balkin Dec. II Ex. D (Depo. Ex. 37 at 1) [DE 589-6] (one of the Sheriff's contract documents modified by hand to provide for "10,000 minutes per month & companions $1.99 thereafter.") *with, e.g.,* Balkin Dec. II Ex. D (Depo. Ex. 69) [DE 589-7].

[18] *See, e.g.,* Tr. at 31.

[19] Plaintiffs tried to avoid this problem by arguing that the Court should simply make subclasses for each different contract.  *See* Tr. at 32.  They never explain how this could be managed, *see* Fed. R. Civ. P. 23(b)(3)(D), or their lack of a representative for each subclass.

But even if there were only one pristine contract form, entered into only once for all putative class members—a hypothetical completely at odds with the evidence—there would still be a plethora of individual contract issues because of the nature of Plaintiffs' supposed contract claims. Those claims are different even for just the two named class representatives. For example, the Sheriff's claim for breach of contract is that the department was "over-billed . . . in three respects:  by rounding minutes up", by billing for "unanswered calls", and by billing for "dropped calls, when the system would drop a call and you'd have to reconnect . . . ." Elledge Tr. at 36 [DE 589-5]. While similar, Delcambre's claim for breach of contract is not entirely the same. It is for "rounding off of billing minutes", "billing for dropped calls where the party had to re-initiate the call" (a *different* claim than simply billing for a "dropped" call itself), and "billing for calls that did not go through", which "may have been if it went over a minute . . . ." Ayo Tr. at 58-59 [DE 589-3]. And Delcambre claims a breach of contract for any dropped call "whether it was Centennial's fault or not"—including, among other things, "calls where the person on the other end hangs up", Ayo Tr. at 61-62 [DE 589-3].

As this indicates, the Sheriff and Delcambre not only have different claims, but would have different individual issues concerning parts of those claims, such as what calls dropped and for what reasons. So would every purported class member, because when it comes to dropped calls, "each situation is unique." Hunt Tr. at 144 [DE 589-11]. The Centennial Defendants' records do not permit them to "tell . . . what the situation was" with respect to any particular dropped call:  "You can't", for example, "differentiate the call that is terminated by—someone drops the phone, and the battery dies, versus a network dropped call . . . ." *Id.* Apart from the concept of dropped calls based on the other party hanging up (which appears to be a claim made only by Delcambre), Plaintiffs' own witnesses agree there are different reasons for

what they consider "dropped calls" such as "[y]ou went into a black hole if you were moving or you didn't have cell phone power coverage" or "if you were talking to someone else who is also on a cell phone if they went into a black hole" or if "the cell phone ran out of battery power" or if "somebody smashed their cell phone . . . "  Elledge Tr. at 37-38 [DE 589-5].  Thus, the facts necessary to determine whether one of the Centennial Defendants should be responsible for one purported class member's claim for dropped calls would be different than the facts for each other purported class member's claims for dropped calls.  By sheer numbers alone, these factual issues would overwhelm any responsible common question in this case.  *Cf., e.g., Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 420 (5th Cir. 1998) (affirming refusal to certify class where putative class members' claims would require "case specific inquiries into the facts"); *Nichols v. Mobile Bd. of Realtors, Inc.*, 675 F.2d 671, 679 (5th Cir. 1982) (class certification properly denied where the "case would degenerate into a series of mini-trials before liability could be established").[20]

      B.     *Individual Contract Defenses Here Would Overwhelm Any Common Issues.*

There are also many different defenses to the claims of Plaintiffs and other putative class members.  Even just a few examples demonstrate the volume of individual issues they would raise.

---

[20] As the Fifth Circuit noted in *O'Sullivan v. Countrywide Home Loans, Inc.*, "[d]etermining whether legal issues common to the class predominate over individual issues requires that the court inquire how the case will be tried."  319 F.3d 732, 738 (5th Cir. 2003) (reversing class certification) (citing *Castano,* 84 F.3d at 744).  Plaintiffs have never explained how this Court could try this case given the need for individual examination into questions such as why each different dropped call by each different customer occurred.

The representative of the Sheriff in this case, for example, testified that he had never seen a cellular service bill from a Centennial Defendant that had calls of any length other than round numbers, nor had he ever seen any such bill that had calls of zero length. Elledge Tr. at 47-49 [DE 589-5]. Given that there are "no calls that have zero minutes and . . . every call is a round number of one or more", he "would draw a conclusion" from looking at any Centennial Defendant's bill "that even a ten-second call is rounded up to one minute." Elledge Tr. at 49-50 [DE 589-5]. Delcambre's representative similarly agreed that "the conclusion I would draw from any review of a bill from a Centennial Defendant was that the company was "rounding up." Ayo Tr. at 62 [DE 589-3]. As this indicates, the claims of any class member who reviewed his, her, or its bills may be subject to a defense of voluntary payment, *see, e.g., Chris Albritton Constr. Co. v. Pitney Bowes, Inc.*, 304 F.3d 527, 532 (5th Cir. 2002), and to other theories of waiver (particularly as to any contracts into which they entered after a first contract with Centennial Beauregard), *see, e.g., Johnson v. Mansfield Hardwood Lumber Co.*, 143 F. Supp. 826, 843 (W.D. La. 1956).[21] But whether a class member reviewed bills will be an individual issue class member by class member by class member, with different time periods for different class members, and differences between class members who renewed a contract and class

_____

[21] Indeed, the Sheriff's representative has conceded that contracts from Centennial Defendants provide "[t]hat the use of fractional minutes is rounded up to the next minute." Elledge Tr. at 58 [DE 589-5]. This contradicts' the Sheriff's own allegations in the current Complaint and raises yet another individual issue, one of estoppel. *See, e.g., Bott v. J.F. Shea Co.*, 299 F.3d 508, 512 (5th Cir. 2002). These sorts of defenses are yet another reason why the proposed class representatives here are not typical for purposes of Federal Rule of Civil Procedure 23(a)(3). *See In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999) ("A proposed class representative is not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation.") (citing cases), *cert. denied*, 529 U.S. 1038 (2000).

- 15 -

members who did not.[22]  The necessity for such individual examination of the facts, and the different evidence that would result from that examination, would quickly overwhelm any common question here.

      A similar problem would arise with respect to damages.  If a class member was reimbursed for any calls billed to it by a Centennial Defendant, those calls could not be part of the claim here.  And the issue of reimbursement will be a highly individual one.  For example, it is clear that some governmental customers obtained reimbursements from their own employees for some calls.[23]  Individual issues would therefore exist as to each bill to each such class member.

      Similarly, even the issue of whether or not a class member *had* such a reimbursement policy that would then permit the Centennial Defendants to raise this defense will be an individual one.  The evidence so far is not sufficient, for example, to answer the question with respect to Delcambre.  *See* Ayo Tr. at 71 [DE 589-3].  Multiply that uncertainty by each purported class member, and the volume of individual issues quickly far outweighs any common ones that may exist.

      As a last example, all present and former non-governmental customers of any of the Centennial Defendants through October 19, 2007 have released all present and future claims

---

[22] For example, while Mr. Ayo agreed that the Town Clerk of Delcambre had a duty to review its cellular service bills, he could not say that the Town Clerk did so.  *See* Ayo Tr. at 84-85.

[23] *See, e.g.,* Transcript of Deposition of Renee Deare ("Deare Tr.") dated August 9, 2010 at 76-77 [DE 589-4] (testimony that her municipality did "charge back parts of the Centennial bill to individuals at the city"); *see also* Deare Tr. at 78-79, 93-95, 99-104 [DE 589-4]; Balkin Dec. II Ex. D (Depo. Exs. 14-21) [DE 589-6].  (The relevant pages of Ms. Deare's deposition cited in this memorandum are attached as Balkin Dec. II Ex. B [DE 589-4].)

of the kind now alleged by Plaintiffs here.[24]  Even if there were doubt about the scope of that

release, it creates a defense not common to all alleged class members, and precludes class

certification here.  *See, e.g., Swoope v. BellSouth Telecomms.*, Nos. 1:97cv181-D-D &

1:97cv359-D-D, 1998 U.S. Dist. LEXIS 11416, at *11-12 (N.D. Miss. June 23, 1998).  Thus, if

Plaintiffs still seek to include any Louisiana consumers after October 19, 2007 in their class or

classes, there will be large numbers of new individual issues to be resolved as to them, only one

of which will be whether they were customers prior to that date and thus bound by the release in

the *Abrusley* case.

       C.     *Individual Issues of the Authority or Lack of Authority of Purported Class Members To Participate In this Case Would Overwhelm Any Common Issues.*

On November 17, 2009, Plaintiffs filed a memorandum in this case attaching,

among other things, a letter from Delcambre purporting to indicate that it had passed a resolution

authorizing its participation in this action.[25]  At oral argument, Plaintiffs' counsel conceded that

their representation of any other governmental entity in Louisiana would require similar special

steps—none of which have occurred with any of the proposed absent class members here:

> MR. DANIEL:  . . . Is that correct, Ted, that you actually have to get approval for the representation of those entities [a state or local government]? . . . .  It's a procedural issue that would have to be addressed to the extent that we actually were able to certify a class.

---

[24] *See* Order Preliminarily Approving Proposed Settlement, *Abrusley v. Centennial Lafayette Cellular Corp.*, No. C-99-380 (La. Dist. Ct. Oct. 19, 2007); Mason Abrusley Dec. Ex. A at unnumbered p. 4 (final judgment and release) [DE 363-2]; *accord* Mason Abrusley Dec. Ex. D ¶ IX.

[25] *See* Supplemental Memorandum In Support of Motion for Leave To File Amended Complaint (Nov. 17, 2009) Ex. 2 [DE 434-2].  The exhibit offered actually did not give authority for this lawsuit, but instead for a lawsuit entitled "Information Services versus Centennial, Et Al."  *See id.* at unnumbered p. 2.

- 17 -

* * *

> [T]he procedure would be . . . that we go to each entity and we identify there [sic] persons in that a class to certify and we seek their approval to proceed. . . .  [I]t would be almost like an opt-out, Judge.

Tr. at 25, 29.  As another of Plaintiffs' counsel then noted:

> MR. HAIK:  Yes, sir, Your Honor. I can add something to this discussion. I learned, as I walked through this maze, that once the governmental entity, such as a municipality, gave the approval or passed a resolution of approval . . . .  It was sent to the attorney general, and the attorney general authorizes special counsel for the city. . . .

Tr. at 29.

In other words, Plaintiffs now say their proposed class will consist of local Louisiana governmental entities that they cannot represent unless and until each one of those entities passes a proper resolution and obtains additional consent from the Louisiana attorney general.[26]  (In effect, they also concede that no state or federal entities would be in their proposed class.[27])  They have not, however, cited any authority that would uphold their proposed procedure.

Furthermore, even if such an opt-in procedure were proper for this case, it would simply create new individual issues that the Centennial Defendants would be entitled to address about the authorizations and the understandings of each governmental entity in addressing those authorizations.  For example, Louisiana law provides that "[n]o parish governing authority, levee board except as provided in Subsection B hereof, parish school board, city school board, or other

―――――――――――――――――

[26] This is consistent with the testimony of each of the proposed class representatives that they had no authority to act for governmental entities other than their own.  *See* Ayo Tr. at 5 [DE 589-3]; Elledge Tr. at 6, 14-15 [DE 589-5].

[27] Approximately eight years ago, the State of Louisiana intervened in this case.  *See* Intervenor's Complaint (May 23, 2003) [DE 261].  The State never served the additional Defendants it named in its complaint, and eventually was voluntarily dismissed.

local or state board" can be represented by special counsel, such as Plaintiffs' counsel here, in any matter "unless a real necessity exists . . . ."  La. Rev. Stat. Ann. § 42:263 (2010); *see generally id.* §§ 42:261-64 (2010).  That issue of "real necessity" would be individual to each proposed class member.  And for some governmental entities, even "real necessity" and a proper resolution would not provide them with authority to participate in this case.  As Title 42, Section 261 of the Louisiana Revised Statutes provides, the governmental authorities of "the parishes of St. Charles, Ouachita, Morehouse, Calcasieu, and Vermilion" cannot be represented by counsel "on a contingent fee or other percentage basis" "except in those specific instances where expressly allowed by law . . . ."  *Id.* § 42:261(G) (2010).

    D. *Individual Arbitration Issues Here Would Overwhelm Any Common Issues.*

    As a final example of the problem of individual issues in this case, this Court properly stayed this litigation as to Jeanerette, but denied a stay with respect to Delcambre.  In doing so, *see, e.g.,* Order at 2 [DE 612], the Court necessarily concluded that the arbitration clause in Jeanerette's contract complies with the standards set forth by the United States Court of Appeals for the Fifth Circuit in *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC,* 379 F.3d 159, 166-71 (5th Cir. 2004); that it is otherwise valid and enforceable under Section 2 of the Federal Arbitration Act (the "FAA"), 9 U.S.C.A. § 2 (West 2010); and that it entitles the Centennial Defendants to a stay pursuant to Section 3 of the FAA, *id.* §§ 3-4 (West 2010),

pending individual, non-class arbitration by the customer involved, *see, e.g., Stolt-Nielsen*, *S.A. v. AnimalFeeds Int'l Corp.,* 130 S. Ct. 1758, 1776 (2010).[28]

But the arbitration clause in Jeanerette's contract is not unusual. Indeed, all of the Centennial Defendants' contracts, beginning in 2003 and continuing to the present, contain substantially identical language. *See, e.g.,* Wolk Dec. ¶¶ 6-8 & Exs. C-F [DE 536-3]; Balkin Dec. II Ex. D (Depo. Ex. 33, 36, 69) [DE 589-6, 589-7]. To the extent that this Court does not simply exclude from any proposed class all putative class members who entered into or extended a contract for service with any Centennial Defendant from 2003 forward—that is, everyone who would have had a contract with the new arbitration clause at some point, no matter when they *started* their service with any Centennial Defendant—the issue of arbitration will arise separately for each and every putative class member. This would then require discovery from each absent class member and individual fights over arbitration. Those individual issues would quickly overwhelm any common issues in this case.

POINT III

THE CERTIFICATION OF A SETTLEMENT-ONLY CLASS IN AN EARLIER CASE BY DIFFERENT CLASS MEMBERS IS NOT *RES JUDICATA* AS TO CERTIFICATION OF THE CLASS OR CLASSES NOW SOUGHT BY PLAINTIFFS

In 2007, Centennial Lafayette Cellular Corporation and Centennial Cellular Corporation entered into an agreement to settle a case brought by an individual consumer

---

[28] The arbitration clause in question provides, in particularly pertinent part, that "[i]nstead of suing in court, you and we each agree to settle any and all disputes and claims (except certain small claims) arising out of or relating to this Agreement or the Service by arbitration or mediation. . . . on an individual basis and not on a consolidated, class-wide, or representative basis." Balkin Dec. II Ex. D (Depo. Ex. 68 § 20) [DE 589-7].

customer of Centennial Lafayette Cellular Corporation.  The Louisiana state trial court in that case eventually granted final approval to that settlement as fair, adequate, and reasonable.  *See* Mason Abrusley Dec. Ex. A [DE 363-2].

As part of that settlement, the parties agreed to certification of a class, for settlement purposes only, of "[a]ll present and former customers of Centennial" (other than "Defendants, Class Counsel, Defendants' Counsel, or the employees of any of them, or any state, federal, foreign or local government").  Mason Abrusley Dec. Ex. C at ¶ 2 [DE 363-2].  That class agreed that its members would release the plaintiffs and their parents and affiliates (which include the Centennial Defendants here) from any claims that "could have been, or could now or later be alleged or asserted against any" of them "arising out of or in any way relating to any claims made or facts alleged in" the *Abrusley* case (which involve claims similar to those here).  Mason Abrusley Dec. Ex. D at 10-11 & ¶ IX [DE 363-2].

As to the current Centennial Defendants, it is primarily this release that bars the claims of non-governmental customers who might otherwise be considered for class membership.  Similarly, the governmental entities that Plaintiffs now principally seem to assert as putative class member here were not (as this Court has held, *see* Order at 1-2 (May 19, 2009) [DE 404]) members of the *Abrusley* class—although, if there had been a governmental entity plaintiff in *Abrusley,* they could have been.

Given these facts, there is little reason even to ask the question of whether the certification of the *Abrusley* class in 2007 requires certification today of a different class between different Plaintiffs, at least three different Defendants, and different putative class members.  But even if the facts were different, the certification of a class for settlement purposes only is not *res judicata* as to the certification of a class for purposes of litigation.

First, the standards are different for the certification of classes for settlement and classes for litigation. *See, e.g., Amchem Prods., Inc.*, 521 U.S. at 619-20. A plaintiff seeking certification of a class for litigation purposes must prove more than a plaintiff and a defendant certifying a class by consent. *See also, e.g., In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004) (citing *Amchem Prods., Inc.*, 521 U.S. at 620)).

Second, in order to invoke *res judicata*, Plaintiffs would have to prove "(1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suit; and (3) an identity of parties or their privies in the two suits." *Chancellor v. Nationwide Credit, Inc.*, No. 98 C 4431, 1999 U.S. Dist. LEXIS 6211, at *5 (N.D. Ill. Apr. 5, 1999) (internal citation omitted). Plaintiffs have not even attempted to make such a showing. As noted above, for example, the class members in *Abrusley* were entirely different than the proposed class members in this case. The *Abrusley* class consisted of individuals and a few businesses. The most clearly-proposed class here is for governmental entities not covered in *Abrusley.* In other words, Plaintiffs cannot establish the "identity of parties" prong required to invoke *res judicata. See, e.g., Decker v. McDonald*, No. 5:09cv27, 2010 U.S. Dist. LEXIS 34400, at *18 (E.D. Tex. Jan. 11, 2010) ("Res judicata (claim preclusion) requires that the parties be identical in both suits . . . The Plaintiff has not shown that the parties in this lawsuit are identical to the parties in" a second lawsuit); *Chancellor*, 1999 U.S. Dist. LEXIS 6211, at *7-8 (where current class members were not included in a prior class settlement class, *res judicata* does not apply); *see also Lewis v. Bloomsburg Mills Inc.*, 773 F.2d 561, 565 n.9 (4th Cir. 1985) (where certain initially-proposed class members were excluded from the class as certified, *res*

*judicata* would not apply to their later class claims).  Thus, the principles of *res judicata* would not apply here.[29]

        Finally, as also noted above, the class in *Abrusley* was expressly certified for purposes of settlement *only*.  *See* Mason Abrusley Dec. Ex. C at ¶ 2 [DE 363-2].  The Supreme Court has recognized that class certification for such a limited purpose is valid, and federal courts have recognized the limited effect of such certifications.  *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 552-53 (N.D. Ga. 2007) (certifying class "for the purposes of the proposed settlement *only*" and noting that "[i]n approving the settlement class, the Court is not endorsing any evidence or arguments . . . in connection with plaintiffs' redefined litigation class . . . In short, certification of the settlement class will *not* have preclusive effect on defendant" in contesting a future class for purposes of litigation) (emphasis added); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 451 ("The Second Circuit has acknowledged the propriety of certifying a class *solely for settlement purposes* . . . and the

---

[29] Nor, for similar reasons, could Plaintiffs rely on any theory of offensive collateral estoppel to demand class certification here.  *See, e.g.*, *Grand Acadian, Inc. v Fluor Corp.*, No. 2:07 CV 295, 2008 U.S. Dist. LEXIS 40151, at *6 (W.D. La. May 19, 2008) ("Although the two suits do implicate similar operative facts and seek similar relief . . . any decision in Court of Federal Claims is not binding under the principle of collateral estoppel because the parties are different."); *accord, e.g.*, *Wethington v. Purdue Pharma LP*, 218 F.R.D. 577, 583 (S.D. Ohio 2003) (collateral estoppel would not apply to a proposed class based on a prior class certification that was "extremely similar" but not "identical" to the proposed class).  While Plaintiffs here have previously cited to *Parklane Hosiery Co. v. Shore,* 439 U.S. 322 (1979), when discussing *res judicata* and collateral estoppel, that decision does not hold otherwise.  Indeed, it emphasizes that such claim or issue preclusion would not be proper if the civil litigant attempting to raise such preclusion (here, Plaintiffs) could have joined in the prior suit.  *Id.* at 332 & n.17 (collateral estoppel proper in that case because the civil litigant raising it could not have joined in the parallel United States Securities and Exchange Commission ("SEC") enforcement action without the SEC's consent pursuant to 15 U.S.C. § 78u(g)).  Plaintiffs here knew of *Abrusley* for many years and yet chose never even to attempt to intervene or join in it.  Unlike the SEC proceeding in *Parklane Hosiery Co.,* no statute would have prevented them from doing so.

Supreme Court has confirmed the viability of such certifications") (emphasis added; citations omitted); *see generally, e.g., Amchem Prods., Inc.*, 521 U.S. at 619-20.

As this indicates, an appeal to *res judicata* by Plaintiffs to cure their failure to prove each element of class certification required by Federal Rule of Civil Procedure 23 cannot succeed.[30]  Because Plaintiffs have not carried their burden as to each such element—including, as shown above, the elements of typicality and predominance of common issues—no class can properly be certified against the Centennial Defendants.

---

[30] Indeed, reference to the *Abrusley* class certified for settlement purposes only should not be considered at all—even were it offered solely for "persuasive" purposes, *see* Order at 3 [DE 612].  It involved different parties.  It was certified for a different purpose.  And, if settlement classes were suddenly to be considered (contrary to existing authority) "persuasive" on the issue of certification of litigation classes later, the "'strong judicial policy favoring the resolution of disputes through settlement'" that is "especially apparent in the class action context", *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 843-44 (E.D. La. 2007) (citations omitted), would be severely undercut for no good reason.

<u>Conclusion</u>

For the reasons stated above and in Centennial Beauregard's prior papers,  this Court should deny Plaintiffs' motion for class certification.


Dated:  January 14, 2011

<div style="margin-left:50%">

Respectfully submitted,

HARDY, CAREY, CHAUTIN & BALKIN, LLP


By:     /s/ *Mark A. Balkin*
        Mark A. Balkin (LA Bar #24952)
        Joseph C. Chautin, III (LA Bar #24995)

        1080 West Causeway Approach
        Mandeville, Louisiana 70005
        (985) 629-0777

        Attorneys for Defendant
        Centennial Beauregard Cellular, L.L.C.

</div>

Of Counsel:

Christopher M. Mason
NIXON PEABODY LLP
437 Madison Avenue
New York, New York 10022
(212) 940-3000

CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2011, the above and foregoing Memorandum was filed electronically using the CM/ECF system that will send a notice of electronic filing to counsel for all parties to this proceeding.

/s/ *Mark A. Balkin*