UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **IBERIA CREDIT BUREAU, INC., ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER: 6:01-2148** |
| **CINGULAR WIRELESS, ET AL** | **JUDGE LEMELLE** |

## ORDER AND REASONS

Before the Court are plaintiffs' opposed Motions for Class Certification[1] (Record Document Number 515)and to Certify Class[2] (Record Document Number 521), pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure . After open court hearing on the motions, parties were asked to submit post-hearing briefs addressing issues of commonality and typicality (Record Document Number 612). Additionally, the Court asked counsel to address the impact here, if any, from a related state court class certification decree. Subsequently, plaintiffs submitted a Memorandum in Support of Motion for Class Certification (Rec. Doc. No. 627); defendant Telecorp submitted a Post-Hearing Brief in Opposition to Class Certification (Rec. Doc. No. 628); plaintiffs submitted a Supplemental Memorandum in Support of plaintiffs' Motion to Certify (Rec. Doc. No. 633); and defendant Centennial submitted a Post-Hearing Surreply Memorandum in Opposition to plaintiffs' Motion for

---

[1] Putative class includes plaintiffs who entered into contracts with Defendant Centennial Communications Corp. ("Centennial").

[2] Putative class includes plaintiffs who entered into contracts with Defendant Telecorp Communications, Inc. ("Telecorp").

Class Certification (Rec. Doc. No. 640). Subsequently, again at the Court's request, plaintiffs submitted a case management order and defendants submitted responses to same. (Rec. Doc. Nos. 657, 660 and 661).

For the following reasons, plaintiffs' motion for class certification of a class composed of certain named governmental entities within the State of Louisiana is **GRANTED**, (Rec. Doc. No. 515); the remaining motions for class certification are **DENIED**.

<u>Plaintiffs' Motion for Class Certification of Centennial Customers</u>[3]

> Plaintiffs move to certify a class defined as:
> All governmental entities who entered into contracts for a specific amount of airtime for a certain amount of money per minute for cellular service or wireless telephone service as provided by Centennial Communications Corp. and all of its related entities, in the State of Louisiana from 1991 to 2001, See Rec. Doc. 633 for listing of governmental entities; and
>
> All natural persons, businesses and/or related entities who entered into contracts for a specific amount of airtime for a certain amount of money per minute for cellular service or wireless telephone service as provided by Centennial Communications Corp. and all of its related entities, in the United States' territories of Puerto Rico and the US Virgin Islands and Jamaica from 1991 to present; and
>
> All natural persons, businesses and/or related entities who entered into contracts for a specific amount of airtime for a certain amount of money per minute for cellular service or wireless telephone service as provided by Centennial Communications Corp. and all of its related entities, in the United States, its

---

[3] The definition of the government class of members was orally modified during the November 4, 2011 hearing relative to geographic location and time period, but only as an alternative to a larger or nationwide class.

> territories of Puerto Rico and the US Virgin Islands and Jamaica from 1991 to present.

(Rec. Doc. No. 515).

### Plaintiffs' Motion to Certify Class of Telecorp Customers

Plaintiffs also move to certify a class defined as:

> All natural persons, businesses and/or related entities who entered into contracts for a specific amount of airtime for a certain amount of money per minute for cellular service or wireless telephone service as provided by Telecorp Communications, Inc., in every area wherein Telecorp Communications, Inc. provided cellular service or wireless telephone service from 1991 to present.

(Rec. Doc. No. 521).

Plaintiffs point out that this action arises mostly out of a standard form contract used by cell phone service providers, and as such, plaintiffs' urge finding the breach of contract claims satisfy the commonality requirement. (Rec. Doc. Nos. 515-1 at 11 and 521-4). Furthermore, plaintiffs allege that the representative plaintiffs' claims are typical of the claims of the class because the claims arise from a standard contract. (Rec. Doc. No. 515-1 at 17). Representative plaintiffs also allege that representative plaintiffs' claims are also typical to the class with respect to breach and damages.

As pointed out by Centennial's counsel during the November 4, 2011 hearing, certain governmental entities within Louisiana did not have the standard form contracts with Centennial between 1991 and 2001. Moreover, their contracts did not contain language about

"rounding up minutes" as that contained in the standard form contracts, but invited the governmental customers to review same at Centennial's offices or with the state's regulatory agency (Record Document Number 515-7).

Plaintiffs also urge class certification based on the collateral estoppel effect of state court decisions in *Abrusley v. Centennial Lafayette Cellular Corp.*, No. C-99380 (La. 33rd Jud. Dist. Oct. 19, 2007) and *Sutton's Steel & Supply, et al. v. Bellsouth Mobility, Inc.*, No. 91421-A (La. 16th Jud. Dist.).

Plaintiffs argue that commonality is met because breach of contract claims are common by their very nature. (Rec. Doc. No. 521-1). Furthermore, they contend individual issues of damage and any defense that may arise after interpretation of the contract do not affect the commonality inquiry for certification purposes. Plaintiffs assert the same arguments for class certification under Rule 23(a) and for maintaining a class under Rule 23(b) against both defendants - the cellular phone service sellers, providers and authors of contracting materials doing business with plaintiffs, the buyers/customers for cellular service from defendants.

Centennial argues the the claims of the proposed class representatives are not typical of the claims of each other nor the putative class members. (Rec. Doc. No. 629). Centennial contends that plaintiffs have offered no evidence that the proposed government entity class representatives used the same contracting

processes as between themselves or any other potential class members. *Id.* at 7. Centennial asserts that, as governmental entities, proposed class representatives' ability to buy in bulk and obtain service by bid proposals puts them in a vastly different position than that of prospective individual class members. *Id.* at 8.

Centennial also contends that common questions would not predominate over individual issues. *Id.* at 11. Plaintiffs' claims are based upon a number of different contracts; some of those contracts have express language on "rounding" up; some only incorporate it by reference and some, mainly the ones with governmental units from 1991-2001, invite customers to view other terms and conditions at certain offices. While certain plaintiffs signed hard copy contracts, others were signed electronically. Accordingly, Centennial argues that the number of different combinations in contract formation among plaintiffs raises individual issues for each. The individual contract issues will give way to individual contract defenses that Centennial contends will overwhelm any common issues. *Id.* at 14. Furthermore, Centennial alleges that many of the purported governmental class members lack authority to participate in this case, presenting individual issues that would overwhelm any common issues of such a class. *Id.* at 17.

Telecorp's post-hearing brief focuses on the predominance

requirement of Rule 23(b)(3). Specifically, plaintiffs cannot overcome the demanding burden of demonstrating that common issues predominate over numerous individual issues of fact and law surrounding each plaintiff's claim. (Rec. Doc. No. 628).

Essentially, defendants argue that a determination of what each costumer knew, was told and received, regarding the method for calculating billable minutes will predominate over potential common issues. Further, according to defendants, individual issues will predominate due to the range of defenses that may be raised, e.g. existence of damage or relief and waiver of payment.

There are differences between plaintiffs that claim to have received a form document with terms and conditions, those that received a form without terms or conditions, those that received no form, and those that cannot recall what they did or did not receive. Again, individualized determinations on how alleged breaches of contract occurred and the multiple variations amongst individual customers on offer and acceptance issues would predominate. As to governmental customers whose contracts did not contain an explanation of "rounding up minutes", their claims involve typical and common issues suspectable to manageable class treatment.

In order for a class to be certified under Fed. R. Civ. P. 23 the proposed class must fulfill both the prerequisites enumerated in Rule 23(a) and at least one of the three requirements provided

in Rule 23(b).  The four threshold requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy.  *Washington v. CSC Credit Servs.*, 199 F.3d 263, 265 (5th Cir. 2000).  These prerequisites require the moving party to demonstrate that the size of the class is large enough to make joinder of the parties impracticable (numerosity), that class members share common questions of law and fact (commonality), that the claims and defenses of the representative parties are characteristic of the claims and defenses of the class members (typicality), and that the representative parties adequately represent the interests of the class as a whole (adequacy).  *James v. City of Dallas*, 254 F.3d 551, 569 (5th Cir. 2001).  Rule 23 certification also requires a showing that the alleged class falls within one of the three categories in Rule 23(b).  *Id.*

### Rule 23(a) Prerequisites for Class Certification

To fulfill the numerosity requirement of Rule 23(a), Plaintiffs must demonstrate that joinder of all members of the class is impracticable due to the sheer size of the class or other relevant factors. *See James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001); *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981).  Although the practicability of joinder generally depends on the number of class members, other factors including geographic dispersion and the difficulty of identifying potential class members are also relevant in determining whether

7

the numerosity requirement is met. *Murillo v. Musegades*, 809 F. Supp. 487, 502 (W.D. Tex. 1992). In *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999), the Fifth Circuit Court of Appeals affirmed the District Court's finding of numerosity when the estimated size of the proposed class was 100 to 150 members. In addition to size, the court also emphasized that the potential geographic dispersion of class members, due to the nature of their employment, supported the lower court's conclusion that joinder would be impracticable. *Id.* In the Seventh, Eighth, and Eleventh Circuits, the numerosity requirement is presumptively fulfilled when the size of the class exceeds forty members. *Chandler v. Southwest Jeep Eagle, Inc.*, 162 F.R.D. 302, 307 (N.D. Ill. 1995); *Caroline C. by & Through Carter v. Johnson*, 174 F.R.D. 452, 463 (D. Neb. 1996); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). The fulfillment of numerosity has not been seriously disputed here. It exists.

The commonality prerequisite of Rule 23(a) provides that representative parties may sue on behalf of a class only if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a). The commonality requirement is a low threshold. *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. Tex. 1993). A single question of either law or fact that is common to members of the class is sufficient to fulfill this requirement. *James*, 254 F.3d at 570. Centennial's contracts from 1991-2001 did not explain

the term "rounding up minutes" to Louisiana's governmental customers. On the other hand, the standard form contracts with the individual customers of defendants contained such an explanation and further referenced other documents that physically came with the cell phone at the time of purchase. Centennial's contracts with noted governmental customers from 1991-2001 are basically the same on at least one common factual issue, the absence of language relative to "rounding up minutes". At least one common legal question is also present in those contracts, the enforceability of a provision that refers customers to Centennial's offices or other geographic localities to view other terms and conditions, as well as the common legal defense issue of waiver by payment.

The third prerequisite of Rule 23(a) requires that the claims and defenses available to the representatives of the class be typical of those belonging to the members of the class as a whole. Fed. R. Civ. P. 23(a). The "typicality" prerequisite is intended to ensure that the interests of the named plaintiffs substantially align with those of the absent plaintiffs. 5 James Wm. Moore et al., Moore's Federal Practice § 23.24 (Mathew Bender 3d ed. 2009). The threshold requirement of typicality is not high or demanding. *Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993). Typicality requires that the named plaintiffs advance similar or identical legal and remedial theories as those that would be advanced by the absent members of the class if they were to proceed

in a parallel action.  *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997). Typicality is also fulfilled despite factual differences in individual claims as long as the "claims arise from a similar course of conduct and share the same legal theory." *James*, 254 F.3d at 571.  However, the typicality requirement is meant to "screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law and fact are present." 7A Wright & Miller, Federal Practice and Procedure § 1764(2008).  Typicality exists for the above-noted limited governmental customer contracts with Centennial.  It does not exist for other contracts involving the individual customers of defendants.

The final prerequisite for class certification under Rule 23(a) is adequacy, which requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Adequacy is necessary to protect the due process rights of absent class members who are nevertheless bound by the judgment.  5 James Wm. Moore et al., Moore's Federal Practice § 23.25 (Mathew Bender 3d ed. 2009).  A representative is inadequate if his interests are antagonistic or in conflict with the interests of the absent class members.  *Mullen*, 186 F.3d at 625-26. Centennial argues that the named local governmental units have not been authorized to participate in this action. Plaintiffs

10

point out that proper authorization has been obtained with more governmental units getting authorization.  Authorized local governmental units as limited, have shown adequacy to proceed under the Rule.  At present, there are no conflicting interests between the governmental class representatives and absent class members.  However, for reasons noted earlier, there are too many material conflicts between contracting individual customers.

### Rule 23(b)(3) Requirements for Maintaining a Class Action

If the prerequisites of Rule 23(a) are satisfied, then a court will allow a class action to be maintained if it falls within one or more of the three categories provided in Rule 23(b).  5 James Wm. Moore et al., Moore's Federal Practice § 23.40 (Mathew Bender 3d ed. 2009).  Plaintiffs here move to certify classes under Rule 23(b)(3).

A class action may be maintained under Rule 23(b)(3), if the court finds that 1) common issues of law or fact predominate over the issues unique to individual members of the class and 2) if a class action is superior to other forms of resolving the dispute among the parties.  The predominance and superiority requirements are "far more demanding" than Rule 23(a)(2)'s commonality requirements, *Amchem Products v. Windsor*, 521 U.S. 591, 624 (1997).  The predominance requirement of Rule 23(b)(3) requires a realistic analysis of "how the plaintiffs'...claims would be tried, individually or on a class basis." *Castano v. Am. Tobacco Co.*, 84

F.3d 734, 744 (5th Cir. 1996). To predominate, "common issues must constitute a significant part of the individual cases." *Mullen*, 186 F.3d at 626. The predominance element of Rule 23(b) may also be satisfied if the "substantive elements of class members' claims require the same proof for each class member." *Nichols v. Mobile Bd. Of Realtors, Inc.*, 675 F.2d 671, 676 (5th Cir. 1982). Additionally, the superiority analysis "requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419 (5th Cir. 1998).

Plaintiffs cite state court decisions in *Abrusley* and *Sutton's Steel, supra,* that allegedly collaterally estop the Centennial defendant from opposing class certification here. (Rec. Doc. No. 627).

The Supreme Court in *Parklane Hosiery* granted trial courts broad discretion to determine when the doctrine of offensive collateral estoppel should be applied. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979). As a general rule, the Court should consider whether the plaintiffs could have easily been joined in the earlier action or whether the application of offensive collateral estoppel would be unfair to a defendant. *Id.* at 332. The trial court should not allow the use of offensive collateral estoppel where such issues are present.

The use of offensive collateral estoppel is permitted "upon

12

the showing of three necessary criteria: (1) that the issue at stake be identical to the one involved in prior litigation; (2) that the issue has actually been litigated in prior litigation; and (3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action." *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1166 (5th Cir. 1981).

However, Centennial claims and plaintiffs fail to rebut that no Centennial entity was a party in *Sutton's Steel*. It would be inappropriate to give estoppel effect to the *Sutton's Steel* judgment as against Centennial. Further, plaintiffs have not demonstrated the criteria necessary to allow estoppel pursuant to the judgment in *Abrusley*. Most importantly, the class certified in *Abrusley* was for settlement purposes only and as such the class certification issues that plaintiffs seek to estop were never actually fully litigated. Accordingly, it would be unfair to allow the use of collateral estoppel in either instance. However, those cases may still provide limited persuasive authority here. The absence of the term "round up minutes" in cellular contracts could have been a decisive point, as here, in certifying a class.

**II. Typicality, Common Questions of Law and Fact vs. Individual Questions, and Rule 23(b)(3)**

In making a certification decision, "the Supreme Court requires district courts to conduct a rigorous analysis of Rule 23 prerequisites." *Unger v. Amedisys Inc.*, 401 F.3d 316, 320-21 (5th

Cir. 2005)(citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)).  "[I]t is the party seeking certification who bears the burden of establishing that the requirements of Rule 23 have been met."  *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003)(citing *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 737-38 (5th Cir. 2003)).  It is necessary for the court to go beyond the pleadings to "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues."  *Unger*, 401 F.3d at 321.

The claims of a purported class representative are not typical if, in order to prove the claims of other class members, the representative must prove something different from what is necessary to prove his own claim.  *In re Prudential Insur. Co. of America Sales Practice Litigation*, 148 F.3d 283, 311 (3d Cir. 1998).  The proposed class representatives in this case represent government entities and individual customers of cellular service providers. In the case of individual customers, plaintiffs have made not shown that the contracts or contracting processes are typical as between the proposed representatives and the absent class members.  To further this point, plaintiffs have not adequately demonstrated that claims between the individual representatives are typical amongst themselves.  Excepting the proposed government class, in order for plaintiffs to show

14

typicality amongst individual customer claims, the proposed representatives would be required to present individualized evidence that would run afoul of Rule 23(b)'s requirement that common questions predominate.

As previously stated, common issues are those that can be resolved on a class-wide basis and do not require individualized determinations. In determining whether common issues predominate, the threshold question is whether those issues overshadow the issues that must be resolved separately for different members of the class. As part of this inquiry, the Court must consider "how a trial on the merits would be conducted if the class were certified." *Sandwich Chef of Texas, Inc. v. Reliance Nat'l indem. Ins. Co.*, 319 F.3d 205, 218 (5th Cir. 2003).

Here, the dominant issue is whether Defendants breached contracts with its customers by "rounding up" minutes. A determination of this issue, as between the non-governmental plaintiffs and all defendants, would require proof of what each class member contracted for, relative to calculating billable airtime minutes; what related documentation was provided upon purchase of the cell phones or later received; what pertinent representations were made to them; and what they understood about quantifying billable minutes. The number of individualized issues of fact surrounding the formation of each contract, as to "rounding up", demonstrates that common issues would not predominate in the

15

claims of individual customers. Some plaintiffs claim a discrepency between oral representations on quantifying minutes and written terms on that subject. Other plaintiffs deny or don't recall receiving the written terms which allegedly contain the method for "rounding up" minutes. The defenses unique to each transaction in analyzing whether there were binding offers and acceptances of the "rounding up" airtime minutes for billing/payment purposes. Importantly, the non-governmental plaintiffs have failed to adequately demonstrate how their claims would be tried or explain how to define workable subclasses for above-noted factual variances between such customers. In *Turner v. Murphy Oil USA, Inc.*, the Court stated that the existence of a trial plan submitted by plaintiffs was a key to the predominance inquiry in addressing the adjudication of individual issues. 234 F.R.D. 597, 606 (E.D.La. 2006). Here, the proposed trial plan for claims of the non-governmental plaintiffs would not adequately allow the Court to adjudicate common class issues first and then later adjudicate individualized issues in later phases. Without more, the individual issues and defenses in this case make the prosecution of the non-governmental plaintiffs' claims as a class unmanageable at this time. There are too many variances here. Named non-governmental plaintiffs allege different circumstances that gave rise to the claims of the proposed class members. Such is not the case with the proposed governmental class of plaintiffs.

A common fact in the latter class is the non-existence of an explanation of "rounding up minutes" in contracts with Centennial from 1991 to 2001.  A common issue of law in the latter class of plaintiffs is whether the invitation to review other terms and conditions, e.g. at Centennial's corporate office, is sufficient under laws of contract.  Those single issues of fact and law are common and typical as between the governmental entities and Centennial for the noted period.

Our findings and conclusions here are also influenced by a recent Supreme Court opinion.  By unanimous vote, the Court in *Wal-Mart Stores, Inc., v. Dukes, et al*, 131 S. Ct. 2541 (June 20, 2011), 2011 WL 2437013 held that FRCP 23 (b)(2) precludes class treatment where monetary relief is not merely incidental to injunctive or declaratory relief that might be available.  Individualized monetary claims belong in FRCP Rule 23(b)(3).  Notably for our purposes, a divided 5-4 Supreme Court in that same case concluded that certification was improper under FRCP Rule 23(a) because there was no common question of law or fact.  Writing for the 5-4 majority on that issue, Justice Scalia expounded "What matters to class certification...is not the raising of common 'questions' - even in droves- but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of

17

common answers." [quoting *Nagareda, Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L. Rev. 97, 132 (2009)]. He further writes that "Without some glue holding the alleged *reasons* for all those (employment) decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." By focusing on the dissimilarities within the putative class at the Rule 23(a)(2) stage, as Justice Ginsberg states in dissent, the majority ruling is indeed "far reaching". Following the majority's reasoning, the fact that breaches of contractual terms may have occurred does not mean that every plaintiff suffering a breach has a common claim. As already noted, there are differing and disputed facts as to how non-governmental representative plaintiffs either became aware of "round-up minutes", disputed such awareness or even agreed to same at the time of cell phone purchase or subsequently. The facts and circumstances leading to the claimed breaches and claim defenses do not have a common resolution for the non-governmental claimants. There will be varying issues of proof in each transaction that would likely lead to different results regarding knowledge, consent, offer, acceptance, etc. Conceptually, such dissimilarities are akin to what Justice Scalia says "have the potential to impede the generation of common answers".

   Frankly, prior to the "Wal-Mart" decision, certification of

this case under Rule 23(a) and 23(b)(3) would have been less problematic. The first part of Justice Scalia's opinion, joined in by four other Justices, throws serious doubt upon the future sustainability of Rule 23(a) class certifications. This is especially noted where in a contractual setting, as here, there are several potential and varying answers to the question "how was the contract formed" or "how, what and when were material terms and conditions delivered", and ultimately several ways that a potential breach of contract occurred or did not - depending on individual analysis of claims and defenses. Because untold members of the putative class members may no longer have the form of contract contested here, they would not benefit from declaratory/injunctive relief. Further, by including every purchaser who paid cell phone bills under a "rounding-up" system, plaintiffs grouped consumers with divergent negotiating histories and removed the predominate factors needed to support a breach of contract claim. *Cf. Robinson v. Texas Automobile Dealers Assoc.*, 387 F. 3d 416 (5th Cir. 2004). On a clearer note, the "Wal-Mart" court was unanimous in de-certifying the Rule 23(b)(2) class claims for individualized monetary relief, despite concurrent claims for equitable relief. If this was a 23(b)(2) based close motion rather than one under 23(b)(3), the voiding of contracts would inevitably lead to awards for monies previously paid under flawed or breached terms and conditions. In the context of Rule 23(a), the future of one of the

best methods of processing large multiple party claims is in a state of uncertain transition.[4]

A teleconference will be held on **December 1, 2011 at 9:00 a.m.** to discuss future proceedings in view of above ruling. No later than **November 22, 2011**, parties' counsel shall submit to the court a joint status report, with recommendations for future scheduling. Centennial's counsel agreed during the most recent hearing to initiate and set up this teleconference call.

New Orleans, Louisiana, this 9th day of November, 2011.

_____
UNITED STATES DISTRICT JUDGE

---

[4] Policymakers might consider re-visiting FRCP 23 and its sub-parts in light of fairly recent jurisprudence and legislative pronouncements, e.g. "Wal-Mart v. Dukes", Class Action Fairness Act, etc.  The viability of class actions as a superior method for resolving certain large multiple party claims, within clearly pronounced and national standards, is ripe for review by those who set national policy.